Matthew Monforton
MONFORTON LAW OFFICES, PLLC
32 Kelly Court
Bozeman, Montana 59718
Phone: (406) 570-2949
Fax: (406) 551-6919
matthewmonforton@yahoo.com

Nicholas R. Barry*
Ian Prior*
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue S.E. No. 231
Washington, D.C. 20003
Phone: (202) 964-3721
nicholas.barry@aflegal.org
ian.prior@aflegal.org
*(pro hac vice forthcoming)

*Attorneys for Plaintiff Johnathan Talbot*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| JOHNATHAN TALBOT, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. CV 23-66-BU-BMM |
| | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| MANOAH AINUU, and THE | ) | |
| NORTH FACE APPAREL | ) | |
| CORP., a Delaware Company. | ) | |
| | ) | |
| *Defendants* | ) | |

1

## INTRODUCTION

1.     Defendant Manoah Ainuu is a paid climber and brand ambassador for Defendant The North Face Apparel Corp. ("North Face").

2.     Supported and assisted by North Face, Ainuu intentionally, maliciously, and repeatedly defamed Plaintiff Johnathan Talbot, calling him a violent "racist" on social media and accused him of making racist comments.

3.     Defendant Ainuu intentionally and recklessly made these false and defamatory statements to destroy Mr. Talbot's reputation and career, thereby both increasing his own fame and serving North Face's commercial interests by promoting its cynically false "social justice mission."

4.     Ainuu repeated his false and defamatory claims online, solicited others to republish it, and repeatedly directed the defamatory statements to Mr. Talbot's employer, a North Face competitor, to harm Mr. Talbot.

5.     North Face's Global Senior Athlete Coordinator, Dave Burleson, endorsed Aniuu's defamatory statements.

6.    The result of Ainuu's actions, all encouraged and supported by North Face, was not merely the destruction of Mr. Talbot's reputation, but even after Ainuu later admitted to Mr. Talbot's employer that the latter did not say anything racist or offensive, Mr. Talbot's employer still buckled under the pressure of the Ainuu's vicious viral campaign and terminated Mr. Talbot, leaving him with no job and a besmirched reputation, and unable to secure work in his chosen profession.

7.     Ainuu remains a paid climber and brand ambassador for North Face.

## PARTIES

8.    Plaintiff Johnathan Talbot ("Plaintiff" or "Mr. Talbot") is a resident of Shelton, Washington. He was employed by a competitor of The North Face in the outdoor business, Outdoor Research, LLC, during the events giving rise to this complaint.

9.    Defendant Manoah Ainuu ("Ainuu" or "Defendant Ainuu") is a resident of Bozeman, Montana, and is presently a sponsored climber for North Face. Ainuu was acting within the scope of his employment during all times relevant.

10.    Defendant North Face is a Delaware company, and a wholly owned subsidiary of V.F. Corporation.

11.    Defendant North Face sells outdoor apparel and recreational equipment, as well as products designed for "extreme winter sport activities, such as high-altitude mountaineering, skiing, snowboarding, and ice and rock climbing." V.F. Corporation, Annual Report (Form 10-K) (May 25, 2023), attached as Ex. 1, at 5. "The North Face products are marketed globally through specialty outdoor and premium sporting goods stores, department stores, independent distributors, independently-operated partnership stores, concession retail stores, approximately 230 VF-operated stores, on websites with strategic digital partners, and online at www.thenorthface.com." *Id.* at 2. North Face products are sold online and at authorized dealers in Bozeman, Montana.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction under 28 U.S.C. §§ 1332 as there is complete diversity and the amount in controversy exceeds $75,000.

13.    Venue is appropriate under 28 U.S.C. § 1391(b)(2) as the events giving rise to this complaint occurred in Bozeman, Montana,

Defendant Ainuu is a resident of Bozeman, and North Face products are sold online and at authorized dealers in Bozeman, Montana.

## FACTS

14.   V.F. Corporation (the parent corporation of North Face) claims that the people who work for North Face and its other subsidiaries "are a force for good in the world, sparking global movements that genuinely make a difference." Ex. 1, at 9.

15.   V.F. Corporation also states that "inclusion, diversity, equity, action" is fundamental to its business and that it "strives to provide an environment that allows our associates to bring their authentic selves to work every day" and that it is "determined to foster a workplace that is free of discrimination and harassment, and promotes allyship, advocacy, and belonging." Ex. 1, 10.

16.   V.F. Corporation also requires its subsidiaries to take social justice beyond the workplace walls and into the communities: "VF is committed to maximizing inclusion, diversity, and equity not only within the Company, but within the communities where we live and work." Ex. 1, at 10.

17.     To help execute the mission of its parent company, Defendant North Face sponsors athletes who lend credibility to its products and serve as brand ambassadors.

18.     North Face publicly announced in 2020 that it would pull all of its Facebook advertising "in the hopes that Facebook will improve its policies against racist, violent or hateful content and misinformation spreading" and that North Face hoped that Facebook "will reconsider their policies and will reevaluate [their] position in the next thirty days." Jessica Guyunn, *Facebook Boycott: North Face is First to Join Civil Rights Group in Demand to End to [sic] Hate Speech*, USA TODAY (June 19, 2020), https://bit.ly/3EDr55W.

19.     The accomplishments, personalities, and causes of these sponsored athletes are central to Defendant North Face's identity and mission.

20.     Defendant North Face's sponsored athletes have the ability to propose outdoor sporting events that are consistent with the athlete's interests, causes, and goals.

21.     These events, if approved, are paid for by Defendant North Face when they meet certain criteria, including generating buzz and media coverage within the sport.

22.     Defendant North Face's sponsored athletes are prominently featured on a dedicated "About Us" page at https://www.thenorthface.com/en-us/about-us, with the tagline: "A higher calling. Our athletes' stories are diverse, but they all share a calling to push the limits of human potential."

23.     Defendant North Face's sponsored athletes have previously used their public platform for the tactic of defaming their competitors while promoting the North Face brand.

24.     In April of 2020, North Face sponsored skier Vasu Sojitra ("Sojitra") used Instagram to attack the directors, producers, and sponsors of the 2019 film "Himalayan Ice: Adventures in India's Most Remote Valley." The film documented the Piti Dharr ice climbing festival and the exploration of remote valley in the Indian Himalaya with La Sportiva climbers Ari Novak ("Novak"), Karsten Delap ("Delap"), and local climber Karn Kowshik ("Kowshik"). Declaration of Ari Novak, attached as Ex. 2, at ¶14..

25.    On April 29, 2020, Sojitra began using his Instagram account to try and cancel those associated with the film, claiming it exhibited a "white saviour complex, white complacency and indigenous erasure." He also compared the film and its treatment of Indians to Christopher Columbus and the European Colonization of America. Ex. 2, at ¶15.

26.    In the following days, Sojitra continued his attacks and broadened them to include La Sportiva, posting "@lasportivana you're the main culprits of this. Given these are both your athletes and you're the title sponsor." He posted a question asked by La Sportiva on its Instagram ("Who's got a question for Karsten or Ari about the film or ice climbing?") and added his own response: "How much do you know about the white saviour complex and its negative impacts on the film?" Sojitra continued for days, harassing and taunting Novak and Delap, as well as La Sportiva, by accusing them of racism and causing him "trauma." Ex. 2, at ¶15.

27.    Sojitra then threatened Petzl, of which Karsten Delap was also a team member. He stated that he started a boycott Petzl campaign to encourage people from communities of color to stop buying gear from

the company unless the movie was pulled from all its marketing platforms. Ex. 2, at ¶16.

28.    Kowshik, an Indian alpinist and co-founder of the Piti Dharr festival, told Outdoor Journal that Sojitra's actions were hurtful and false: "By doing what he did, he robs us of our voice and our agency. We have problems and we're aware of them and we have our own strategies to combat them and take them on. Whether they've worked or not so far, they are our strategies. So where we want to go, what we want to do, that's our call to take and not his. Another concern is that many of the facts he states are not true. He starts by saying the film didn't show what really happened. That's not true. What happened was a wonderful experience and the film aims to show that. In fact, on his post in the La Sportiva page he asks why I was left out of the film. That's not true—I have more screen time than both Ari and Karsten combined. So, that's a fact. It's also a fact that in the opening credits of the film, it says 'featuring Karn Kowshik, Prerna Dangi, Bharat Bhushan'. So it doesn't place us in the background but talks about us as featured climbers. It shows Prerna's climbing, it shows Bharat's climbing journey. It's not accurate to say that we didn't get enough time." Ex. 2, at ¶¶17-18.

29.     Ultimately, Kowshik, along with the two other founders of the festival – Bharat Bhusan and Prerna Dani – were so disturbed by Vasu's actions that all three sent a letter complaining to North Face. Ex. 2, at ¶19.

30.     North Face has taken no apparent action with respect to Sojitra's actions, and he remains a sponsored athlete highlighted on its website.

31.     Since at least 2018, Defendant Ainuu has been a North Face sponsored "athlete" highlighted on North Face's website.

32.     Since becoming sponsored by North Face, Defendant Ainuu has developed a significant social media following. His Instagram account (@adreadedclimber) has over 15,000 followers, among them North Face's own Instagram account. Manoah Ainuu (@adreadedclimber),                                    INSTAGRAM, https://www.instagram.com/adreadedclimber/ (attached as Ex. 3).

33.     Defendant Ainuu links to North Face's Instagram account in his profile and uses that account to post photographs of his activities as a North Face-sponsored athlete and to make statements about "social justice" and "systemic racism."

34.   In his position as a North Face-sponsored athlete, Ainuu has generated significant media attention that allows him to highlight his personality and causes, all to the benefit of Defendant North Face's mission.

35.   In 2021, he starred in a film entitled "Black Ice," which CNN described as a film about "climbers aiming to boost diversity." Ben Church, *'It Was Super Cool Just Having That Much Melanin in Montana':* *The Climbers Aiming to Boost Diversity,* CNN (March 19, 2021), https://bit.ly/3r2KJoU.

36.   In that film, Defendant Ainuu could not recall being the victim of overt racism but cited "microaggressions" and "compliments" as sources of frustration that he sees as "racist."

37.   Defendant Ainuu has been featured in the following media stories:

   a. Michael Easter, *Learn Functional Fitness from Ice Climber Manoah Ainuu*, MEN'S HEALTH (March 2, 2022), https://tinyurl.com/4a3ejbvt.

   b. Daniel Duane, *Up, Up and Away from It All*, NEW YORK TIMES MAGAZINE (Sept. 23, 2020), https://tinyurl.com/28xjbzd7.

c. Felicia Radel, *"I Don't Think It Has Really Set In": First All-Black Team to Summit Everest Talk Historic Trek,* USA TODAY (June 13, 2022), https://tinyurl.com/2z22crz9.

d. Topher Gauk-Roger*, Meet the First All-Black Group of Climbers Attempting to Summit Mount Everest: "It's Really Powerful,"* PEOPLE MAGAZINE (Feb. 22, 2022), https://tinyurl.com/3j4jw6ys.

38.   This extensive media coverage not only describes Defendant Ainuu's mountain climbing exploits but also highlights his position with Defendant North Face and his use of that position to publish and amplify his statements.

39.   Defendants North Face and Ainuu have also collaborated on specific initiatives related to their joint mission of bringing social justice to communities.

40.   Following the death of George Floyd, Defendant North Face issued a press release on October 15, 2020, announcing its "Reset Normal" initiative, which was centered around a $7 million donation to organizations "with the goal of building equity in the outdoors and creating opportunities for all."  Press Release, The North Face, The North

12

Face Addresses Inequity in the Outdoors and Pledges to RESET Exploration with Upcoming Fellowship Program (Oct. 15, 2020) at 4, (attached as Ex. 4).

41.   As part of the initiative, Defendant North Face announced that its "athletes and ambassador partners will also be tasked with creating personal pledge videos that share their individual stories and aspirations about how they would like to reset their normal in 2020." Ex. 4, at 4.

42.   Defendant North Face published Defendant Ainuu's "Reset Normal" video pledge on its YouTube channel on October 27, 2020. North Face's YouTube channel currently has 489,000 subscribers. The North Face, *Reset Normal: Manoah Ainuu*, YOUTUBE (Oct. 27, 2020), https://bit.ly/3sY0KN8.

43.   The video highlighted Defendant Ainuu's position as "a full-time professional climber on the North Face team" whose role includes "participating in photo shoots, instructing at ice festivals and climbing clinics, and attending events like Color the Crag, an annual festival celebrating diversity in climbing." The North Face, *Reset Normal: Manoah Ainuu*, YOUTUBE (Oct. 27, 2020), https://bit.ly/3sY0KN8.

44.     The video also discussed Defendant Ainuu's upcoming "all Black and Brown expedition to attempt Mount Everest," an expedition that was completed in May of 2022.

45.     Defendant Ainuu's philosophy of using his public platform to speak out against what he defines as racism aligns with North Face's use of its public platform to speak out against what it defines as racism.

46.     To that end, Defendant Ainuu frequently uses his North Face-branded Instagram account to make claims like the following, "In this House We Believe: The American Dream is a scam. Policing Originates From Runaway Slave Patrols. Capitalism Exploits. Colonialism Is Evil. The Founding Fathers Were Racist. American Imperialism Must End. America Was Built On Genocide & Slavery. We Are On Stolen Indigenous Land." Manoah Ainuu (@adreadedclimber), INSTAGRAM (Jun. 19, 2023), attached as Ex. 5.

47.     In February of 2020, La Sportiva-sponsored climber and Michigan Ice Festival instructor Ari Novak ("Novak") invited Defendant Ainuu to the Michigan Ice Festival, an annual climbing event that includes instruction and presentations and is sponsored by several

outdoor industry companies, including North Face. Declaration of Ari Novak, Ex. 2, at ¶12.

48.     Defendant Ainuu arrived during Novak's speech and appeared to Novak to be intoxicated and under the influence. Ex. 2, at ¶12.

49.     Defendant Ainuu told Novak that he was going night climbing and Novak's 16-year-old female student/mentee would be joining him. Ex. 2, at ¶12.

50.     Novak told him that night climbing in his condition was reckless and he ultimately had to protect his student from Defendant Ainuu's reckless behavior. Ex. 2, at ¶12.

51.     Defendant Ainuu stated that Novak's actions to prevent Defendant Ainuu and Novak's student from night climbing were racist. Ex. 2, at ¶12.

52.     Novak informed Dave Burleson, the Global Senior Athlete Coordinator for North Face, of Defendant Ainuu's conduct but North Face appears to have taken no disciplinary action. Ex. 2, at ¶12.

53.     While a North Face-sponsored athlete, Defendant Ainuu met Mr. Talbot on the street outside of a bar in Bozeman, Montana, on June 20, 2023. Declaration of Johnathan Talbot, attached as Ex. 6, at ¶6.

54.     Mr. Talbot was in Bozeman to conduct a focus group for Outdoor Research, his Seattle-based employer that manufactures and sells apparel and gear for outdoor sports, including alpinism, rock and ice climbing, backpacking, skiing, and snowboarding. Ex. 6, at ¶¶4-5.

55.     Mr. Talbot's title was Product Manager Gloves, in the OR Pro section, which develops, designs, and manufactures products for the U.S. military and first responders. Ex. 6, at ¶4.

56.     Mr. Talbot began working for Outdoor Research on March 20, 2023, at a base salary of $115,000 per year, with a signing bonus of $3,000. Ex. 6, at ¶3.

57.     Upon leaving the building where the focus group had been held, Mr. Talbot saw Defendant Ainuu and introduced himself, explained that he worked for Outdoor Research, shared his background, and engaged in light conversation with Defendant Ainuu. Ex. 6, at ¶6.

58.   During this brief conversation, Defendant Ainuu got upset and yelled at Mr. Talbot, telling him he was "racist and entitled." Ex. 6, at ¶7.

59.   Defendant Ainuu then walked into a nearby bar where Mr. Talbot was also going. Ex. 6, at ¶7.

60.   Once both men were in the bar, Defendant Ainuu started pointing at Mr. Talbot, repeatedly called him a racist, and encouraged other patrons to take out their phones and record the scene. Ex. 6, at ¶8.

61.   The bartender asked what was going on, and Mr. Talbot told him that Defendant Ainuu was upset about something Mr. Talbot had said, but he did not know why. Ex. 6, at ¶8.

62.   While Mr. Talbot attempted to speak with Ainuu to understand Ainuu's anger and allegations of racism, at no point did Mr. Talbot attempt to provoke a physical confrontation. Ex. 6, at ¶9.

63.   Mr. Talbot was never asked to leave the premises. Ex. 6, at ¶10.

64.   Early the next morning at approximately 3 a.m. local time, Defendant Ainuu started posting on his Instagram account ("@adreadedclimber") to his 15,000 followers (which includes North

Face's Instagram account), allegations that Mr. Talbot had made racist comments to him.

65.    Defendant Ainuu's first post to Instagram was a video, in which he said the following: "Hey yo, Outdoor Research, I'm not even playing man. This guy John, he came up to me, introduced himself and said 'you look like someone I should know.' It was at a bar at the Crystal, which I often frequent. A lot of my friends are there, or work there. And this guy came up to me and started talking all this stuff, started asking questions – very directly – about diversity. And I answered honestly, and he kept cutting me off, didn't want to hear what he was wanting to hear, but what he was asking for, which is very, very obvious. So, when I started to check him on it and correct him and direct him and educate his ass for free – for free, free, free, free, free – he got very defensive. So, I said yo, we're done talking – this conversation is over bro. I told you the truth, don't cut me off while I'm talking if you're asking. You're not listening, and you're asking, very big red flag – back up. I went inside, he came inside and tried to shake my hand and I was like 'yo you're apologizing,' he just started apologizing over and over again and I'm like 'if you're apologetic buy me a beer at least. That's the minimum you can

do.' And right after that, he squared up to me got right in my face like this, and he's like 'I didn't do anything wrong.' How do you apologize and say you don't do anything wrong within like five seconds? Oh, because you're not truly apologetic. So, this guy John who designs product or something for you guys OR, please fucking check him. This guy's tripping, he's racist." Ex. 6, at ¶12.

66.   Immediately after his initial video post, Defendant Ainuu continued to attack Mr. Talbot with a series of false and defamatory publications, made explicitly and/or by implication, that Mr. Talbot had made racist comments and had assaulted him. Manoah Ainuu (@adreadedclimber), INSTAGRAM (Jun. 21, 2023), https://www.instagram.com/adreadedclimber/ (attached as Ex. 7).

   a. "@outdoorresearch John, product designer or something, is not a good representation of your great brand. I hope there are repercussions, or at least a corporate talk . . . **ideally an extermination**. The amount (hot words incoming) of gaslighting, toxic masculinity, and white guilt were drowning. An apology followed by an invitation to fight?" "Also, he didn't get kicked oht[sic] of bar after getting in my face. He followed

with incessantly trying to shake my hand. [emojis]," and "Pls share, in case OR doesn't respond." Ex. 7 (emphasis added).



b. "John who works for @outdoorresearch just tried to fight me after saying racist things. I tried to de-escalate the 'conversation' (he kept cutting me off after asking questions) and then he flipped." Ex. 7.

67.    Dave Burleson, the Global Senior Athlete Coordinator for North Face (Dave Burleson, LinkedIn, https://bit.ly/46hw8EJ (attached as Ex. 8)), posted Ainuu's false and defamatory comment, and Ainuu then reposted Burleson's implications, adding: "@outdoorresearch please hold your employee John that is in Bozeman right now accountable" and "To the racists in outdoor industry, we will find you and we will remove you." Ex. 7.



68.    Defendant Ainuu continued to defame Talbot with the following posts:

a. "@outdoorresearch full internet call out– waiting on response," and "Aye all my (majority) white followers/allies [emoji]. This is your call out. My flesh really wanted to educate jon. Self-control is draining and exercised too often. Please help me take care of this boy. I can see if you watch and don't share, whether from uncomfortability or apathy. Much love." Ex. 7.



b. "If you follow my internet-visible life and care – reshare something and tag OR so this boy has consequences for his actions. Our outdoor industry microcosm can't have people like this," and "Don't know last name. OR knows who John is. Visiting Bozeman and yelling at me that he's from there. #whitelocalismMT [emojis]." Ex. 7.



   c. "Also, if anyone thinks I'm being extra, check your thoughts. My work is to change the outdoor industry—the old white men that show Hate after one shows Love should be held accountable. #johnatOR." Ex. 7.



   d. "Johnathan Talbot, Product manager of Gloves. @outdoorresearch you now have 0 excuse. We know who your employee is. To reiterate, OR is a fine company – a lot of my friends climb or work with OR. This isn't a boycott lol." Ex. 7.



69.   Defendant Ainuu's call to his followers to republish these false and defamatory statements in an effort to get Outdoor Research to fire Mr. Talbot soon gained steam, with many of them directly responding to Outdoor Research's Instagram posts with false and defamatory accusations based on Defendant Ainuu's original publications. Defendant Ainuu would often republish these comments on his own page to reward his followers and keep the momentum of his smear campaign against Mr. Talbot moving. Replies to Manoah Ainuu's June 21, 2023 Instagram Posts, attached as Ex. 9. The following comments were made, of and concerning Mr. Talbot, by Ainuu's followers:

a.   Instagram user reply to Outdoor Research: "Ok but what are you gonna do about John is gloves on this summer solstice? Seems like a perfect time to fire an aggressive racist white man and get a new start with a POC." Ex. 9.

b. Instagram user reply to Outdoor Research: "Our Ethiopian/Samoan brother Manoah @adreadedclimber shared a story this week: He's hanging at a bar in Bozeman MT when a white guy questions his right to be there. Then picks a fight with him *** Brands that knowingly employ individuals with racist tendencies - are enablers. But OR I am sure you're not ok with this, I see you have a diversity statement on your website." Ex. 9.

c. "US mountain towns can be very difficult to live in for a person of color. *** Yeah the blame can be pointed at the individual. The Jonathan's of the world. But I really want us to be critical of how these Jonathan's have been created." Ex. 9.

d. Instagram user reply to Outdoor Research: "How have y'all still not attempted to make things right with Manoah? Be transparent about your timeline and actions or at least be transparent about your choice to endorse your employee's racism." Ex. 9.

e. Instagram user reply to Outdoor Research: "@outdoorresearch this is your two week notice. No public

response regarding your racist employee Jon Talbot? Time is up OR, you did @adreadedclimber so wrong & I've lost any confidence in your company actually practicing what it preaches [emojis]." Ex. 9.

f.  Instagram user reply to Outdoor Research: "Hold your employees accountable and do the right thing!! The outdoor community and the world are looking at you. Be the change!! Set the standard that bigotry and hatred is not tolerated!!" Ex. 9.

g.  Instagram user reply to Outdoor Research: "Lightweight? Sounds like OR's commitment to making the outdoors and it's gateway communities a friendly environment for everyone. OR gear is trash, as are OR employees who assault people of color in small towns." Ex. 9.

h.  Instagram user reply to Outdoor Research: "Comms person to comms person, it's really not a good idea to delete comments where folks are generously letting you know that a white employee is attacking a Black climber for his work on diversity and inclusion in the outdoor industry." Ex. 9.

70.    At approximately 8:00 a.m. on June 21, 2023, Mr. Talbot received a call from Amy McCanless ("McCanless") of Outdoor Research's Human Resources Department, who informed him that Ainuu had been making accusations against him on social media, told him to look at Ainuu's posts, and instructed him to leave Bozeman and return to Seattle until Outdoor Research could get a handle on the situation. Ex. 6, at ¶11.

71.    On June 21 or 22, 2023, Outdoor Research released a statement on Instagram that read: "Through direct messages and story tagging today, it came to our attention that there was a verbal exchange in Bozeman, MT between @adreadedclimber and an OR employee. For those that have messaged our social accounts, emailed us, or contacted customer service, you are heard. OR does not support discriminatory conduct based on race or any other reason, and we take these matters very seriously. We hope to get the chance to speak to Manoah directly about what transpired." Outdoor Research (@outdoorresearch), INSTAGRAM (Instagram story attached as Ex. 10).



72.     On or about June 22, 2023, Outdoor Research spoke to Defendant Ainuu about his allegations. Ex. 6, at ¶13. He posted on Instagram about that discussion on June 23, 2023, writing: "Talked with @outdoorreseach yesterday. Felt heard. Still awaiting further response. This is not just for me, it's for Us. Overwhelmed and drained – but hopeful of mellower times for Us all. Thank you to all who spoke up and came together. This is where its at. Better together," and "Vagueness because of vagueness. Hoping for action and clarity. There are legal obligations to employees – but need something." Manoah Ainuu (@adreadedclimber) Instagram, (Jun. 23, 2023) (Instagram story, attached as Ex. 11).



73.   McCanless emailed Mr. Talbot on June 23, 2023, asking him to take administrative leave while things were sorted out. Ex. 6, at ¶14.

74.   Mr. Talbot was placed on administrative leave on June 23, 2023 and remained on administrative leave until June 30, 2023. Ex. 6, at ¶14.

75.   During a telephone conference on June 27, 2023, Mr. Talbot and McCanless discussed Ainuu's accusations. Ex. 6, at ¶15.

76.   McCanless told Mr. Talbot that Ainuu could not point to any racist or offensive statement. Ex. 6, at ¶15.

77.   Two days later, on June 29, 2023, McCanless and Mr. Talbot spoke again, at which time McCanless informed Mr. Talbot that Outdoor Research was terminating him because he "showed poor judgment, in

[his] actions in Bozeman, both prior to and during [the] incident at the bar." Ex. 6, at ¶16.

78.    Outdoor Research followed up this conversation with a letter, informing Mr. Talbot that his termination was effective on July 14, 2023. Ex. 6, at ¶17.

79.    On July 4, 2023, Defendant Ainuu resumed his attacks on Mr. Talbot. Manoah Ainuu (@adreadedclimber), INSTAGRAM (Jul. 4, 2023) (Instagram stories, attached as Ex. 12).

80.    This included a new Instagram video post, which began with the following captions on screen: "@outdoorresearch Hi remember me?" and "John too far Gone – give this 'grown' man his consequences. **He's lucky to not have learned physically**." Ex. 12 (emphasis added).



Behind the captions, Defendant Ainuu delivered the following remarks on video: "What the fuck are you talking about? So say that, say that, say that to people and the thing is like, no he's not." Ex. 12. After Defendant Ainuu finished speaking to the camera, the video showed a screenshot of a post from his supporter, Curtis Irion, who indicated that he was repeatedly emailing Outdoor Research and posted one such email, which was met with approval from Ainuu: "From a long-time customer. There has still been no resolution with Manoah and your Director of gloves. This man should have been fired immediately. You are now officially on blast from the outdoor community and friends. You run a professional company and have left this completely unresolved. Your silence states that Manoah was lying, or that your company is racist and only use Black/Brown people as needed. My 4 climbing friends and I spend 75,000 $ a year from your company. This racist move of yours just lost you millions, from 5 people alone. I am sure you can appreciate your bottom line. Do the right thing and make amends with [Ainuu] soon before the rage against your company really hurts your brand, image, and income." Ex. 12. Ainuu reposted this to his own Instagram page and

added: "Don't ask what to do, do . . . Curtis is my man. Emailing every

day for weeks whilst we're ignored." Ex. 12.



81.   Defendant Ainuu continued to attack Mr. Talbot on July 4,

2023, with the following Instagram posts:

    a.  "Those o yall asking about OR. I ain't forget. Again, if y'all

       think I'm aggressive, what about their employee? Initiated a

       fight with me. Update waiting but of course not expected

       #corporatemarketing Fuck being nice" and "@outdoorresearch

       July Fourth Bish wtatcyal saying?? ?????!!!! Juneteenth

       obviously don't matter To y'all. Nor does a public call out.

       #telljonathancomebacktobozemanIgot him this time . . ." Ex.

       12.



b. "Here I go again fk or fk jonathan hi or thanks for not communicating. Don't market diversity. First time going out in weeks since this. Y'all don't hear this perspective often." Ex. 12.



c. "@outdoorresearch [emojis] happy 4th mfers. Ppl forget - I
don't. Jon fck you. Come back to bzn.. OR useless. Shoot
fireworks and celebrate 4th July - don't celebrate Juneteenth,
why? Independence from what? White colonists from
England?!?! How bout Indigenous and Black peoples??!?" Ex.
12.



82.    Mr. Talbot is currently unemployed following his termination
from Outdoor Research and has been unable to secure employment
because of Defendant Ainuu's false and defamatory attacks, who was
acting as an agent of North Face, whose social media attacks were
known, permitted, and shared by North Face, and who continues to be an
agent of North Face. Ex. 6, at ¶18.

## CLAIMS FOR RELIEF

### Count I: Libel by Manoah Ainuu

83.   Mr. Talbot repeats paragraphs 1–82.

84.   Defendant Manoah Ainuu made the following string of false statements, all within the same general time frame and to the same audience of 15,000 followers, that were either explicitly defamatory or were defamatory in the context in which they were made:

    a.   "So, this guy John who designs product or something for you guys OR, please fucking check him. This guy's tripping, he's racist."

    b.   "John who works for @outdoorresearch just tried to fight me after saying racist things. I tried to de-escalate the 'conversation' (he kept cutting me off after asking questions) and then he flipped."

    c.   "@outdoorresearch please hold your employee John that is in Bozeman right now accountable. To the racists in outdoor industry, we will find you and we will remove you."

    d.   "If you follow my internet-visible life and care – reshare something and tag OR so this boy has consequences for his

actions. Our outdoor industry microcosm can't have people like this. Don't know last name. OR knows who John is. Visiting Bozeman and yelling at me that he's from there. #whitelocalismMT [emojis]."

e. "Also, if anyone thinks I'm being extra, check your thoughts. My work is to change the outdoor industry – the old white men that show Hate after one shows Love should be held accountable. #johnatOR."

f. "Jonathan Talbot, Product manager of Gloves. @outdoorresearch you now have 0 excuse. We know who your employee is. To reiterate, OR is a fine company – a lot of my friends climb or work with OR. This isn't a boycott lol."

g. "@outdoorresearch Hi remember me?" and "John too far Gone – give this 'grown' man his consequences. He's lucky to not have learned physically."

h. "Those o yal asking about OR. I ain't forget. Again, if y'all think I'm aggressive, what about their employee? Initiated a fight with me. Update waiting but of course not expected #corporatemarketing Fuck being nice"

i.  "@outdoorresearch July Fourth Bish wtatcyal saying?? ?????!! Juneteenth obviously don't matter To y'all. Nor does a public call out. #telljonathancomebacktobozemanIgot him this time . . ."

j.  "Here I go again fk jonathan hi or thanks for not communicating. Don't market diversity. First time going out in weeks since this. Y'all don't hear this perspective often."

k.  "@outdoorresearch [emojis] happy 4th mfers. Ppl forget - I don't. Jon fck you. Come back to bzn.. OR useless. Shoot fireworks and celebrate 4th July - don't celebrate Juneteenth, why? Independence from what? White colonists from England?!?! How bout Indigenous and Black peoples??!?"

85.    These false and defamatory statements are of and concerning Mr. Talbot; in each post Defendant Ainuu either explicitly tagged or named Mr. Talbot and/or his employer, Outdoor Research. Moreover, Defendant Ainuu intended to refer to Mr. Talbot in these statements and Mr. Talbot, his employer Outdoor Research, and Defendant Ainuu's followers understood these statements to be about Mr. Talbot.

86.   These statements, which communicate to an average reader that Mr. Talbot assaulted an African-American man and made racist comments, are false and defamatory.

87.   The injury to Mr. Talbot's reputation from Defendant Ainuu's statements is readily apparent. Such statements tend to disgrace and degrade the reputation of another and would cause him to be shunned and avoided by the community. Further, the court can presume as a matter of law, without extrinsic evidence, that these statements will tend to disgrace or degrade the Plaintiff or cause him to be shunned and avoided. As such, Defendant Ainuu's statements are defamatory *per se*.

88.   By publishing these false and defamatory statements, Defendant Ainuu caused harm to Mr. Talbot's reputation.

89.   At the time of these false and defamatory statements, Defendant Ainuu knew that his statements were false - Mr. Talbot did not make any racist comments to Defendant Ainuu nor try to fight him.

90.   The natural and probable consequence of Defendant Ainuu's false and defamatory statements and requests for his followers to amplify the substance of those statements and direct them to Mr. Talbot's employer, Outdoor Research, resulted in the following additional false

and defamatory statements by Defendant Ainuu's followers, attached at Ex. 9:

a. Instagram user reply to Outdoor Research: "Ok but what are you gonna do about John is gloves on this summer solstice? Seems like a perfect time to fire an aggressive racist white man and get a new start with a POC."

b. Instagram user reply to Outdoor Research: "Our Ethiopian/Samoan brother Manoah @adreadedclimber shared a story this week: He's hanging at a bar in Bozeman MT when a white guy questions his right to be there. Then picks a fight with him *** Brands that knowingly employ individuals with racist tendencies - are enablers. But OR I am sure you're not ok with this, I see you have a diversity statement on your website."

c. "US mountain towns can be very difficult to live in for a person of color. *** Yeah the blame can be pointed at the individual. The Jonathan's of the world. But I really want us to be critical of how these Jonathan's have been created."

d. Instagram user reply to Outdoor Research: "How have y'all still not attempted to make things right with Manoah? Be transparent about your timeline and actions or at least be transparent about your choice to endorse your employee's racism."

e. Instagram user reply to Outdoor Research: "@outdoorresearch this is your two week notice. No public response regarding your racist employee Jon Talbot? Time is up OR, you did @adreadedclimber so wrong & I've lost any confidence in your company actually practicing what it preaches [emojis]."

f. Instagram user reply to Outdoor Research: "Hold your employees accountable and do the right thing!! The outdoor community and the world are looking at you. Be the change!! Set the standard that bigotry and hatred is not tolerated!!"

g. Instagram user reply to Outdoor Research: "Lightweight? Sounds like OR's commitment to making the outdoors and it's gateway communities a friendly environment for everyone.

OR gear is trash, as are OR employees who assault people of color in small towns."

h. Instagram user reply to Outdoor Research: "Comms person to comms person, it's really not a good idea to delete comments where folks are generously letting you know that a white employee is attacking a Black climber for his work on diversity and inclusion in the outdoor industry."

91. As a direct and proximate result of these false and defamatory statements by Defendant Ainuu and his supporters who republished those statements, Mr. Talbot has suffered damages, including *inter alia*, injury to his reputation, loss of his job, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

92. Defendant Ainuu's actions were negligent, malicious, willful and wanton, and evidenced a conscious disregard for Mr. Talbot's rights.

93. Defendant Ainuu's tortious actions were within the scope of his role as a sponsored athlete for Defendant North Face, were expressly or impliedly authorized by Defendant North Face, or were motivated by Defendant Ainuu's purpose to serve Defendant North Face's interests.

## Count II: Tortious Interferences with Prospective Economic Advantage by Manoah Ainuu

94.    Mr. Talbot repeats paragraphs 1–93.

95.    Defendant Ainuu knowingly made false and defamatory statements that Mr. Talbot had made racist comments to him and tried to fight him, published those defamatory statements on Instagram, directed those statements to Outdoor Research, and encouraged his followers to do the same for the intended purpose of interfering with Mr. Talbot's economic relationship with his employer without justifiable cause.

96.    As a direct and proximate result of Defendant Ainuu's wrongful actions to interfere with Mr. Talbot's economic relationship with Outdoor Research, Mr. Talbot has suffered damages, including *inter alia*, injury to his reputation, loss of his job, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

97.    Defendant Ainuu's actions were negligent, malicious, willful, and wanton, and evidenced a conscious disregard for Mr. Talbot's rights.

98.    Defendant Ainuu's tortious actions were within the scope of his role as a sponsored athlete for Defendant North Face, were expressly

or impliedly authorized by Defendant North Face, or were motivated by Defendant Ainuu's purpose to serve Defendant North Face's interests.

### Count III: Libel by North Face (Respondeat Superior)

99.   Mr. Talbot repeats paragraphs 1–98.

100.  Defendant North Face sponsors athletes who become brand ambassadors, whose accomplishments, personalities, and causes are central to North Face's identity.

101.  Further, Defendant North Face encourages its sponsored athletes to bring their authentic selves to work and to develop relationships in the community to advocate for social justice and against what it believes to be systemic racism.

102.  Defendant North Face helps set its philosophical expectations for its sponsored athletes by encouraging them to take part in diversity, equity, and inclusion initiatives.

103.  Defendant North Face further sets those expectations for sponsored athletes by North Face's direct use of public pronouncements and financial punishment against companies for alleged racism.

104.  Defendant Ainuu, using his North Face-branded Instagram account, was acting at all times as an Agent and Representative of Defendant North Face.

105.  Using that medium, Defendant Ainuu falsely alleged that Mr. Talbot made racist comments to Ainuu, an African American man, and that Mr. Talbot tried to fight him.

106.  Such false and defamatory accusations of misconduct tend to disgrace and degrade Mr. Talbot and/or cause him to be shunned and avoided, as evidenced by Mr. Talbot being the target of a successful campaign by Ainuu and his followers that caused Outdoor Research to terminate Mr. Talbot's employment.

107.  Global Senior Athlete Coordinator for Defendant North Face Dave Burleson endorsed Ainuu's false and defamatory statements when he published them to his own Instagram page.

108.  Several others did the same, often in reply to Outdoor Research's Instagram posts. Such republications were the natural, probable, and intended consequence of Ainuu's original false and defamatory statements.

109.   As a direct and proximate result of these false and defamatory statements by Defendant Ainuu and his supporters, Mr. Talbot has suffered damages, including *inter alia*, injury to his reputation, loss of his job, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

110.   Because Defendant Ainuu was acting on behalf of and with the approval of Defendant North Face, or to further Defendant North Face's interest, it is vicariously liable for Defendant Ainuu's original publication of false and defamatory statements as well as the subsequent republication of those statements.

### Count IV: Tortious Interference with Prospective Economic Advantage by North Face (Respondeat Superior)

111.   Mr. Talbot repeats paragraphs 1–110.

112.   Defendant North Face sponsors athletes who become brand ambassadors, whose accomplishments, personalities, and causes are central to The North Face identity.

113.   Further, Defendant North Face encourages its sponsored athletes to bring their authentic selves to work and to develop

relationships in the community to advocate for social justice and against what it believes to be systemic racism.

114.   Defendant North Face helps set its philosophical expectations for its sponsored athletes by encouraging them to take part in diversity, equity, and inclusion initiatives.

115.   Defendant North Face further sets those expectations for sponsored athletes by North Face's direct use of public pronouncements and financial punishment against companies for what North Face perceives as racism.

116.   Defendant Ainuu, using his Defendant North Face-branded Instagram account, was acting at all times as an Agent and Representative of North Face Apparel Corp. Using that medium, Defendant Ainuu falsely alleged that Mr. Talbot made racist comments to Ainuu, an African American man, and that he tried to fight him. Such false and defamatory accusations of misconduct tend to disgrace and degrade Mr. Talbot and/or cause him to be shunned and avoided, as evidenced by Mr. Talbot being the target of a successful campaign by Ainuu and his followers, that caused Outdoor Research to terminate Mr. Talbot's employment.

117. Global Senior Athlete Coordinator for North Face Dave Burleson endorsed Ainuu's false and defamatory statements when he published them to his own Instagram page.

118. Defendant Ainuu knowingly made false and defamatory statements that Mr. Talbot had made racist comments to him and tried to fight him, he published those false and defamatory statements on Instagram, he directed those statements to Outdoor Research, and encouraged his followers to do the same for the intended purpose of interfering with Mr. Talbot's economic relationship to cause him loss without justifiable cause.

119. As a direct and proximate result of Defendant Ainuu's wrongful actions to interfere with Mr. Talbot's economic relationship with Outdoor Research, Mr. Talbot has suffered damages, including *inter alia*, injury to his reputation, loss of his job, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

120. Defendant Ainuu's actions were negligent, malicious, willful, and wanton, and evidenced a conscious disregard for Mr. Talbot's rights.

121.   Because Defendant Ainuu was acting on behalf of and with the approval of Defendant North Face, or to further Defendant North Face's interest, it is vicariously liable for Defendant Ainuu's wrongful actions to interfere with Mr. Talbot's economic relationship with Outdoor Research.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Johnathan Talbot respectfully requests that the Court enter an Order against Manoah Ainuu and The North Face Apparel Corp.:

a.   Awarding Plaintiff Johnathan Talbot damages, including any presumed, actual, and/or compensatory, in an amount greater than $75,000 or in such amount as proven at trial;

b.   Awarding Plaintiff Johnathan Talbot punitive damages;

c.   Awarding Plaintiff Johnathan Talbot his costs, including attorneys' fees arising from this action, including any appeals; and

d.   Award such other and further relief as may be just and appropriate.

## JURY DEMAND

Plaintiff Johnathan Talbot hereby demands a trial by Jury on all matters for which a Jury trial is permitted or allowed under applicable law.

DATED: October 2, 2023

Respectfully Submitted,

/s/ Matthew Monforton

Nicholas R. Barry*
Ian Prior*
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue S.E. No. 231
Washington, D.C. 20003
Phone: (202) 964-3721
nicholas.barry@aflegal.org
ian.prior@aflegal.org
*(pro hac vice forthcoming)

Matthew Monforton
MONFORTON LAW OFFICES, PLLC
32 Kelly Court
Bozeman, Montana 59718
Phone: (406) 570-2949
Fax: (406) 551-6919
matthewmonforton@yahoo.com