MELOY LAW FIRM

Peter Michael Meloy
P.O. Box 1241
Helena, MT 49624
Telephone: (406) 442-8670
Email: mike@meloylawfirm.com

BALLARD SPAHR LLP

Leita Walker
Isabella Salomão Nascimento
2000 IDS Center, 80 S Eighth St.
Minneapolis, MN 55402-2119
Telephone: (612) 371-3211
Email:walkerl@ballardspahr.com
Email:salomaonascimentoi@ballardspahr.com

Seth D. Berlin
1909 K St., NW
12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Email: berlins@ballardspahr.com

*Attorneys for Defendant VF Outdoor, LLC d/b/a The North Face*

---

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| **JOHNATHAN TALBOT**, <br><br> **Plaintiff**, <br><br> **v.** <br><br> **MANOAH AINUU**, *et al.*, <br><br> **Defendants**. | **Case No. 2:23-cv-00066-BMM** |

**MEMORANDUM OF LAW IN SUPPORT OF COMBINED MOTION TO DISMISS AND SPECIAL MOTION FOR EXPEDITED RELIEF BY DEFENDANT VF OUTDOOR, LLC d/b/a THE NORTH FACE**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

EXHIBIT INDEX ................................................................................... viii

INTRODUCTION ...................................................................................... 1

FACTS ....................................................................................................... 3

I.      THE PARTIES ................................................................................ 3

        A.      The Plaintiff ........................................................................ 3

        B.      The Defendants ................................................................... 3

II.     THE EVENTS AT THE CRYSTAL BAR ...................................... 5

III.    THE EVENTS AFTER THE BARROOM INCIDENT .................. 7

IV.     TALBOT'S LAWSUIT .................................................................. 8

ARGUMENT .............................................................................................. 8

I.      CHOICE OF LAW ......................................................................... 9

        A.      Talbot's State of Residence—Washington—Has the Most
                Significant Relationship with This Multistate Defamation
                Case .................................................................................. 10

        B.      Washington's Anti-SLAPP Act Governs This Action ...... 10

        C.      Governing Legal Standard ................................................ 12

II.     TALBOT'S DEFAMATION CLAIM FAILS AS A MATTER OF
        LAW ............................................................................................ 13

        A.      TNF Is Not The "Publisher" Or Otherwise Vicariously
                Liable For The Challenged Speech .................................. 13

        B.      The Challenged Statements are Absolutely Protected
                Expressions of Opinion .................................................... 18

1.    The Content: Courts routinely treat allegations such as those here as protected expressions of opinion ....................20

2.    The Context: The use of Instagram underscores that the Challenged Statements are non-actionable expressions of opinion ...............................................................24

III.   TALBOT'S TORTIOUS INTERFERENCE CLAIMS SIMILARLY FAIL AS A MATTER OF LAW..............................................26

IV.   TALBOT'S PUNITIVE DAMAGES CLAIM ALSO FAILS AS A MATTER OF LAW.........................................................................27

V.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .......................................................................................28

CONCLUSION ..........................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                         **Page(s)**

*Albert v. Loksen,*
    239 F.3d 256 (2d Cir. 2001) ................................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................12, 14, 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................12, 14, 15, 18

*Bose Corp. v. Consumers Union,*
    466 U.S. 485 (1984).........................................................................................22

*Bretz v. United States,*
    2020 U.S. Dist. LEXIS 166772 (D. Mont. Aug. 12, 2020) ................................3

*Camer v. Seattle Post-Intelligencer,*
    723 P.2d 1195 (Wash. 1986) ....................................................................18, 19

*Clark v. Viacom Int'l,*
    617 F. App'x 495 (6th Cir. 2015) ...................................................................14

*Clifford v. Trump,*
    339 F. Supp. 3d 915 (C.D. Cal. 2018) .............................................................22

*Clifford v. Trump,*
    818 F. App'x 746 (9th Cir. 2020) ........................................................11, 23, 28

*Connick v. Myers,*
    461 U.S. 138 (1983)..........................................................................................12

*Cort v. St. Paul Fire & Marine Ins.,*
    311 F.3d 979 (9th Cir. 2002) ...........................................................................13

*Crosswhite v. Reuters News & Media,*
    2021 U.S. Dist. LEXIS 246628 (W.D. Va. Dec. 28, 2021)...............................14

*Dodge v. Evergreen Sch. Dist. #114,*
    56 F.4th 767 (9th Cir. 2022) ............................................................................11

*Dodge v. Evergreen Sch. Dist. No. 114*,
   2020 U.S. Dist. LEXIS 135581 (W.D. Wash. July 30, 2020) ............................20

*Duc Tan v. Le*,
   300 P.3d 356 (Wash. 2013) .................................................................................13

*Dunlap v. Wayne*,
   716 P.2d 842 (Wash. 1986) .......................................................................19, 24

*Edelman v. Croonquist*,
   2010 U.S. Dist. LEXIS 43399 (D.N.J. Apr. 30, 2010) .....................................20

*Forte v. Jones*,
   2013 U.S. Dist. LEXIS 39113 (E.D. Cal. Mar. 19, 2013) .................................20

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ......................................................................25, 28

*Garnett v. Remedi Seniorcare of Va.*,
   892 F.3d 140 (4th Cir. 2018) .............................................................................18

*Garnier v. O'Connor-Ratcliff*,
   41 F.4th 1158 (9th Cir. 2022) ............................................................................12

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ............................................................................................27

*Green v. Miss USA*,
   52 F.4th 773 (9th Cir. 2022) ...........................................................................8, 9

*Greensun Grp. v. City of Bellevue*,
   436 P.3d 397 (Wash. Ct. App. 2019) .................................................................26

*Herring Networks v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021) ...............................................................19, 22, 28

*Hoffer v. State*,
   755 P.2d 781 (Wash. 1988) ................................................................................26

*Hunt v. Liberty Lobby*,
   720 F.2d 631 (11th Cir. 1983) ...........................................................................27

*Hunter v. Hartman*,
   545 N.W.2d 699 (Minn. Ct. App. 1996)......................................................22, 25

*Hustler Magazine v. Falwell*,
   485 U.S. 46 (1988)....................................................................................26

*Jankovic v. Int'l Crisis Grp.*,
   494 F.3d 1080 (D.C. Cir. 2007)..............................................................14

*Jevremovic v. Courville*,
   2023 U.S. Dist. LEXIS 139440 (D.N.J. Aug. 10, 2023) ...................................25

*Jha v. Khan*,
   520 P.3d 470 (Wash. 2022) ....................................................................11

*Kelley v. Howard S. Wright Constr.*,
   582 P.2d 500 (Wash. 1978) ....................................................................16

*Knievel v. ESPN*,
   223 F. Supp. 2d 1173 (D. Mont. 2002).............................................................3, 22

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) .................................................................24

*Lokhova v. Halper*,
   995 F.3d 134 (4th Cir. 2021) ........................................................14, 15, 16, 17

*Maison de France v. Mais Oui!*,
   108 P.3d 787 (Wash. Ct. App. 2005).................................................................27

*Makaeff v. Trump Univ.*,
   736 F.3d 1180 (9th Cir. 2013) .................................................................11

*McConkey v. Flathead Elec. Coop.*,
   2005 MT 334, 330 Mont. 48, 125 P.3d 1121 ....................................................19

*McFarlane v. Esquire Magazine*,
   74 F.3d 1296 (D.C. Cir. 1996).................................................................27

*Milkovich v. Lorain Journal*,
   497 U.S. 1 (1990) .......................................................................18, 22

*Openiano v. Hartford Life & Annuity Ins.*,
    829 F. App'x 829 (9th Cir. 2020) .................................................12, 16

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) .......................................................*passim*

*Pelkowski v. Hovermann*,
    2021 U.S. Dist. LEXIS 259784 (E.D.N.Y. Sept. 9, 2021) .................................25

*Phillips v. GMC*,
    2000 MT 55, 298 Mont. 438, 995 P.2d 1002 .....................................10

*Price v. Viking Penguin*,
    881 F.2d 1426 (8th Cir. 1989) ...............................................27

*Ratajack v. Brewster Fire Dep't*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016) ...............................................20

*Robel v. Roundup Corp.*,
    59 P.3d 611 (Wash. 2002) .................................................19

*Sandmann v. N.Y. Times Co.*,
    78 F.4th 319 (6th Cir. 2023) ...............................................23

*Smith v. Sch. Dist. of Phila.*,
    112 F. Supp. 2d 417 (E.D. Pa. 2000).........................................20, 21

*Snyder v. Phelps*,
    562 U.S. 443 (2011)....................................................11

*Spratt v. Toft*,
    324 P.3d 707 (Wash. 2014) ...............................................11

*Squitieri v. Piedmont Airlines*,
    2018 U.S. Dist. LEXIS 25485 (W.D.N.C. Feb. 16, 2018) ................................20

*St. Amant v. Thompson*,
    390 U.S. 727 (1968).......................................................27

*Steam Press Holdings v. Haw. Teamsters & Allied Workers Union,
Local 996*,
    302 F.3d 998 (9th Cir. 2002) ...............................................21

*Taskett v. KING Broad.*,
546 P.2d 81 (Wash. 1976) ...............................................................27

*Tavoulareas v. Piro*,
759 F.2d 90 (D.C. Cir. 1985).....................................................13, 14

*Time v. Pape*,
401 U.S. 279 (1971)........................................................................22

*Wingfield v. Dep't of Pub. Health & Hum. Servs.*,
2020 MT 120, 400 Mont. 70, 463 P.3d 452 ..................................26

**Statutes**

§ 27-1-802, MCA ...................................................................................13

RCW 4.105.010.............................................................................*passim*

RCW 4.105.020.............................................................................1, 28

RCW 4.105.060.......................................................................12, 13, 28

RCW 4.105.090.....................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12 ..................................................................*passim*

*Restatement (Second) of Conflict of Laws* § 150 ...................................10

*Restatement (Second) of Torts* § 409 ..................................................17

U.S. Const. amend. I .......................................................................passim

## <u>EXHIBIT INDEX</u>

*Manoah Ainuu*, The North Face Climber ......................................................... Ex. A

Ben Church, *'It was super cool just having that much melanin in Montana': The climbers aiming to boost diversity*, CNN (Mar. 19, 2021) .......................................................................................................Ex. B

Michael Easter, *Learn Functional Fitness From Ice Climber Manoah Ainuu*, Men's Health (Mar. 2, 2022)...........................................................Ex. C

Daniel Duane, Jimmy Chin & Savannah Cummins, *Up, Up, and Away from It All*, N.Y. Times Magazine (Sept. 23, 2020) .................................... Ex. D

Felecia Wellington Radel, *'I don't think it has really set in': First all-Black team to summit Everest talk historic trek*, USA Today (June 13, 2022) ...........................................................................................Ex. E

Topher Gauk-Roger, *Meet the First All-Black Group of Climbers Attempting to Summit Mount Everest: 'It's Really Powerful'*, People (Feb. 22, 2022) ....................................................................................Ex. F

Manoah Ainuu (@adreadedclimber), Instagram (June 27, 2023) .................... Ex. G

*Community Guidelines*, Instagram ................................................................. Ex. H

Letter from Leita Walker to Matthew Monforton, Nicholas R. Berry & Ian Prior (Oct. 27, 2023)..............................................................................Ex. I

Defendant VF Outdoor, LLC d/b/a The North Face ("TNF"), incorrectly sued as "The North Face Apparel Corporation," respectfully submits this memorandum of law in support of its Combined Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and Special Motion for Expedited Relief under Revised Code of Washington ("RCW") Section 4.105.020.

## INTRODUCTION

This case arises from statements Defendant Manoah Ainuu made on his personal Instagram account, after a night out at a local bar in Bozeman, Montana, during which he had a heated encounter with Plaintiff Johnathan Talbot. According to Ainuu's social media posts, Talbot treated him in a racist fashion. Then, when Ainuu tried to distance himself from Talbot, Talbot pursued him and got in his face in a manner Ainuu perceived as physically threatening. Talbot denies trying to provoke a fight, and professes ignorance as to why his statements upset Ainuu. But Talbot was subsequently terminated by his employer for "show[ing] poor judgment," "both prior to and during [the] incident at the bar" in Bozeman.

Although none of Ainuu's posts about his encounter with Talbot tag, mention, or promote TNF or its products—TNF only learned of Ainuu's posts after they went live, like everyone else on Instagram—Talbot now sues them both for defamation and tortious interference. He claims that TNF is somehow responsible

1

for Ainuu's speech merely because it sponsors him as a climber to promote its brand and products.

Talbot's attempt to hold TNF liable for the speech of an independent contractor is not viable under hornbook defamation law, which requires publication, or any secondary liability theory. Moreover, Talbot's defamation claim fails for the separate reason that the statements he challenges are protected expressions of opinion under both federal constitutional and state common law. Talbot's tag-along tortious interference and punitive damages claims both also fail as a matter of settled law.

Finally, because this is a multistate defamation claim premised on diversity jurisdiction, the substantive law of Talbot's state of residence—Washington— governs this action. This includes its Anti-SLAPP Act,[1] which, under longstanding Ninth Circuit jurisprudence, is a substantive aspect of state law. The statute shields speech on matters of public concern from protracted litigation, and requires Talbot to pay TNF's attorneys' fees and costs where, as here, he has failed to state a claim.

---

[1] "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation.

2

# FACTS[2]

## I.   THE PARTIES.

### A. The Plaintiff

Talbot is a Washington state resident, who, at the time of the relevant events, worked for Outdoor Research, LLC ("OR"), a Seattle-based company that manufactures and sells outdoor sports gear and apparel. Compl. ¶¶ 8, 54. Talbot started working for OR in March 2023, *id.* ¶ 56, and was subsequently fired in June 2023, *id.* ¶¶ 77-78, 82.

### B. The Defendants

TNF is a leading developer of outdoor gear. *Id.*, Ex. 1 at 4. Its products include "[h]igh performance outdoor apparel, footwear, equipment, [and] accessories" "designed for extreme winter sport activities." *Id.* at 5. Among other things, to promote its products, TNF enters into "sponsorship contracts with a number of athletes." *Id.* at 14.

---

[2] Facts herein drawn from the Complaint are accepted as true solely for purposes of this motion. In addition to the Complaint, "the Court may also consider documents attached to the pleadings" or "incorporated into the pleadings by reference," without converting the motion into one for summary judgment. *Bretz v. United States*, 2020 U.S. Dist. LEXIS 166772, at *7 (D. Mont. Aug. 12, 2020). "The incorporation by reference doctrine allows a court to consider 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002), *aff'd*, 393 F.3d 1068 (9th Cir. 2005). Copies of the documents cited herein are attached as exhibits to the Declaration of Leita Walker ("Walker Decl.").

Ainuu is one such sponsored athlete, with whom TNF contracts to promote its brand and its products. *Id*. ¶¶ 22 (referencing "About Us" page on TNF's website), 31 (same). Born in Compton, California, Ainuu is a first-generation American, whose parents immigrated to the U.S. from Samoa and Ethiopia. Walker Decl. Ex. A.

Today, Ainuu is a resident of Bozeman, Montana, and a professional climber who has been featured in major media outlets, including *CNN*, *Men's Health*, *USA Today*, and *People* magazine. Compl. ¶¶ 35-37 (attached to Walker Decl. as Exs. B-F). In May 2022, Ainuu made history as a member of the first all-Black team to summit Mount Everest. *See* Walker Decl. Exs. E, F.

Ainuu maintains a social media presence on Instagram under the handle @adreadedclimber. Compl. ¶ 32 (hyperlinking to https://www.instagram.com/adreadedclimber/). The "bio" section of his Instagram profile states: "🖤🤎♥Ethiopian&Samoanᴇᴛᴀꜱ🪶Vegan-Animals=friends not food🦃 Music is a beautiful thing-Mac Miller. Bzn, MT @thenorthface @smartwool @fullcircleeverest." *Id*. Ex. 3. Ainuu uses his Instagram account to document his own thoughts, opinions, and experiences, and even to promote other brands not affiliated with TNF. *See, e.g.*, *id*. Ex. 5; Walker Decl. Ex. G (tagging other outdoor gear companies, such as Patagonia, Yeti, and Arcteryx).

On occasion, Ainuu creates content specifically for TNF. For example, in October 2020, in light of the national racial reckoning then underway, TNF asked its sponsored athletes to "creat[e] personal pledge videos that share their individual stories and aspirations," Compl. Ex. 4 at 4, which it then shared on the company YouTube channel, Compl. ¶ 42 (hyperlinking to *Reset Normal: Manoah Ainuu/The North Face*, YouTube (Oct. 27, 2020), https://www.youtube.com/watch?v=wVp09EPN2qE).[3]

## II.   THE EVENTS AT THE CRYSTAL BAR.

This case stems from a late-night dispute between Talbot and Ainuu at a Bozeman bar. Compl. ¶¶ 53, 65.

Over the summer, Talbot's employer, OR, sent him to Bozeman to conduct a focus group on a tentative new product line. *Id*. ¶¶ 54, 55; *id*. Ex. 6 ("Talbot Decl.") ¶ 5. On June 20, 2023, Talbot headed from a team dinner to the Crystal, a nearby bar. Compl. ¶ 59; Talbot Decl. ¶ 6.

According to Talbot, he met Ainuu outside and introduced himself. Compl. ¶ 57; Talbot Decl. ¶ 6. The conversation quickly devolved, with Ainuu becoming upset at something Talbot said to him. Compl. ¶ 58. According to statements

---

[3] The Complaint claims that Ainuu's pledge video "highlighted" his "position as a 'full-time professional climber on the North Face team'" and "discussed [his] upcoming 'all Black and Brown expedition to attempt Mount Everest.'" Compl. ¶¶ 43, 44. The video, however, does not include any such statements.

Ainuu later made on Instagram, and incorporated in the Complaint: Talbot peppered Ainuu with questions "about diversity," but when Ainuu attempted to respond, Talbot repeatedly cut him off and "got very defensive." *Id*. ¶¶ 65, 66(b). Ainuu ended the discussion, telling Talbot he was "racist and entitled." *Id.* ¶¶ 58, 65. Ainuu then walked into the bar to get away from Talbot. *Id*. ¶¶ 59, 65.

Talbot acknowledges that, rather than let the disagreement lie, he pursued Ainuu into the bar. *Id*. ¶¶ 59, 62, 65. According to Talbot, once inside, he approached Ainuu "to speak with [him] to understand his anger and allegations of racism." *Id*. ¶ 62. According to Ainuu, Talbot "came inside and tried to shake [his] hand" and "just started apologizing over and over again." *Id*. ¶¶ 65, 66(a).

The conversation between Talbot and Ainuu again took a turn, and the bartender intervened. *Id*. ¶ 61. According to Ainuu's posts, in the midst of apologizing to him, Talbot "squared up to [him]" and "got right in [Ainuu's] face," claiming he (Talbot) "didn't do anything wrong." Compl. ¶¶ 65, 66(a), 66(b). Ainuu perceived all this as "an invitation to fight," *id*. ¶ 66(a), but he did not engage.

While Talbot denies that he was attempting to provoke a physical confrontation with Ainuu or that his comments could be perceived as racially insensitive, *id*. ¶ 62, he does not actually challenge many of Ainuu's statements, including that Talbot "squared up to" him or "got right in [Ainuu's] face," *see id*.

¶¶ 84(a)-(k) (listing the challenged statements). In Talbot's retelling, he admits he told the bartender that "Ainuu was upset about something about something I had said." Talbot Decl. ¶ 8.

## III.   THE EVENTS AFTER THE BARROOM INCIDENT.

In the early morning hours of June 21, Ainuu posted to Instagram a video and seven written statements about his encounter with Talbot. Compl. ¶¶ 64-68. Dave Burleson, who was then a Global Senior Athlete Coordinator for TNF, reposted without any comment one of Ainuu's statements to his personal, non-TNF affiliated Instagram page. *Id*. ¶ 67.

Several hours later, someone from OR, having seen Ainuu's post, called Talbot about the altercation and directed Talbot to return to Seattle. Talbot Decl. ¶ 11. On June 22, at OR's request, Ainuu spoke with OR about the incident with Talbot in Bozeman. Compl. ¶¶ 71-72. The next day, OR placed Talbot on administrative leave. *Id.* ¶ 74. On June 29, OR informed Talbot he was being terminated, effective July 14, for "show[ing] poor judgment, in [his] actions in Bozeman, both prior to and during [the] incident at the bar." *Id*. ¶¶ 77-78.

Unaware of this development, on July 4, Ainuu again took to Instagram over what he perceived to be OR's lack of action. *Id*. ¶¶ 79-81. He posted a video and several written statements directed at OR for its perceived failure to hold Talbot accountable. *Id*.

## IV.   TALBOT'S LAWSUIT.

Talbot is suing both Ainuu and TNF, asserting counts against each for defamation and intentional interference with prospective economic advantage. Compl. ¶¶ 83-121. Talbot challenges eleven specific Instagram statements by Ainuu (the "Challenged Statements").  *Id*. ¶¶ 84(a)-(k).

With respect to TNF, Talbot claims the company is somehow responsible for speech that Ainuu, one of its independent contractors, published on his own Instagram account, *id*. ¶¶ 104, 109-110, even though TNF did not author, edit, publish, or republish it. Talbot alleges the Challenged Statements falsely accuse him of making racist comments and trying to fight Ainuu. *Id*. ¶ 105. As a result, he seeks presumed, actual, and punitive damages, all in unspecified amounts. *Id*. at 48.

As explained below, Talbot's claims against TNF are foreclosed by hornbook defamation law since it is not the publisher. And because Ainuu's statements constitute protected expressions of opinion based on his subjective perceptions of events, Talbot cannot state a claim against either defendant. His case should be dismissed with prejudice.

## **ARGUMENT**

"[T]he First Amendment's protections extend to … unnecessary *litigation* that chills speech. This is why federal courts have emphasized the importance of

resolving First Amendment cases at the earliest possible junction." *Green v. Miss USA*, 52 F.4th 773, 800 (9th Cir. 2022). This Court should follow that "well-trodden path," and the Washington Anti-SLAPP Act, by swiftly dismissing this action, so that speech is not unconstitutionally chilled "through unnecessary and protracted litigation." *Id.*

Under applicable law, Talbot cannot state a viable claim against TNF for multiple reasons. ***First***, TNF did not "publish," in any sense of the word, the Challenged Statements. ***Second***, the challenged speech—essentially, that Talbot "made racist comments to Ainuu" and "tried to fight him," Compl. ¶ 105—are, in context, absolutely protected statements of opinion and therefore not actionable. ***Third***, Talbot's tortious interference claim fails both because he has not stated a viable defamation claim and because he has not pleaded facts establishing the elements of that tort. ***Fourth***, applicable law does not permit punitive damages. ***Finally***, because the Complaint is fatally deficient and amendment would be futile, it must be dismissed with prejudice under both Rule 12 and the Washington Anti-SLAPP Act.

## I.   CHOICE OF LAW.

This defamation case involves the application of both federal constitutional law, governed by Ninth Circuit precedent, and state common and statutory law, governed by Washington law, including its Anti-SLAPP Act.

**A.      Talbot's State of Residence—Washington—Has the Most
Significant Relationship with This Multistate Defamation Case.**

In a "multistate defamation" case, where the parties reside in different states

and the speech at issue was published through a mass medium such as Instagram,

courts must decide, under the forum state's choice-of-law rules, which state's

substantive law governs. For tort claims, Montana follows the "most significant

relationship" approach of the *Restatement (Second) of Conflict of Laws*

("*Restatement*"). *See Phillips v. GMC*, 2000 MT 55, ¶ 21, 298 Mont. 438, 995 P.2d

1002. The *Restatement* provides that, in a multistate defamation case, "the state of

most significant relationship will usually be the state where the [plaintiff] was

domiciled at the time," because that is where he suffers the greatest injury to his

reputation. *Restatement* § 150. Here, Talbot was and is a Washington state

resident, who was working for a Washington-based company. Compl. ¶¶ 8, 54. He

was summoned back to Washington by OR, which terminated his employment

there. *Id*. ¶¶ 70, 77. Washington law therefore governs the state law issues in this

case.

**B.      Washington's Anti-SLAPP Act Governs This Action.**

Washington's Anti-SLAPP Act, the Uniform Public Expression Protection

Act, applies to any "cause of action asserted in a civil action against a person based

on the person's … [e]xercise of the right of freedom of speech … guaranteed by

the United States Constitution or Washington state Constitution, on a matter of

public concern." RCW 4.105.010(2)(c). The Ninth Circuit has long held that anti-SLAPP statutes confer substantive rights and therefore apply in diversity actions, provided they do not conflict (or can be harmonized) with the Federal Rules of Civil Procedure. *See Makaeff v. Trump Univ.*, 736 F.3d 1180, 1184 (9th Cir. 2013) (Wardlaw, J. concurring) (explaining denial of petition for rehearing *en banc* seeking to reverse established Circuit precedent on this issue); *Clifford v. Trump*, 818 F. App'x 746, 750 (9th Cir. 2020) (affirming application of Texas anti-SLAPP law and dismissal of defamation claim with prejudice where tweet at issue was protected opinion). Because Washington's Anti-SLAPP Act relies on the same "failure to state a claim" standard as Rule 12(b)(6), there is no conflict and the statute applies.

Under that law, "[w]hether speech is a matter of public concern is a question of law" determined "by the content, form, and context of a given statement, as revealed by the whole record." *Jha v. Khan*, 520 P.3d 470, 477 (Wash. 2022). "[S]peech involves 'matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id*. at 478 (quoting *Spratt v. Toft*, 324 P.3d 707, 713 (Wash. 2014); *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

Allegations of "racism" unquestionably address a "matter[] of public concern." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 777 (9th Cir. 2022);

*see also Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983) (describing "racial discrimination" as "a matter inherently of public concern"). Thus, Washington's Anti-SLAPP Act applies to the Instagram posts at issue. *See Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1162-63 (9th Cir. 2022) ("social media sites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard[,] … facilitating communication and stirring public debate" (cleaned up)).

### C.    Governing Legal Standard.

Under both Rule 12(b)(6) and the Washington Anti-SLAPP Act, the question is whether the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); RCW 4.105.060. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "draw[s] on its judicial experience and common sense," *id*. at 679, and determines whether the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where documents properly considered on a motion to dismiss "'contradict' allegations in the complaint, the court need not accept such allegations as true," and the exhibits govern. *Openiano v. Hartford Life & Annuity Ins.*, 829 F. App'x 829, 830 (9th Cir. 2020).

12

Under the Washington Anti-SLAPP Act, where the moving party has established that (a) the Act applies and (b) the pleading fails to state a cause of action, the action must be dismissed with prejudice, and the prevailing party is entitled to its costs and reasonable attorneys' fees. *See* RCW 4.105.060, 4.105.090.

## II.    TALBOT'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW.

### A.    TNF Is Not The "Publisher" Or Otherwise Vicariously Liable For The Challenged Speech.

Under Washington law, a defamation plaintiff must prove that the defendant actually published the challenged statements. *See Duc Tan v. Le*, 300 P.3d 356, 363 (Wash. 2013); *see also* § 27-1-802, MCA (same under Montana law). Talbot's claim against TNF fails this basic requirement because the speech he challenges is not TNF's, and none of Talbot's theories for holding TNF liable for Ainuu's speech is viable.

**Publication**: In defamation cases, "publication is a term of art." *Cort v. St. Paul Fire & Marine Ins.*, 311 F.3d 979, 985-86 (9th Cir. 2002) (cleaned up); *see also Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) (same). To satisfy the requirement, Talbot must show that either TNF *authored* or *edited* the challenged Instagram posts or is the *publisher* of those statements. *See Tavoulareas v. Piro*, 759 F.2d 90, 136-37 (D.C. Cir. 1985) (even individual who "participated in the investigation" of a news report, but who did not take "part in the *actual* writing or editing" of the article, "played no role in the actual preparation of the story," and

13

had no authority over its "*final* publication" was not a "publisher"). TNF did not author, edit, publish, or republish the Challenged Statements—on Instagram or elsewhere. Talbot does not allege that TNF had any authority or control over Ainuu's publication on his Instagram account of statements about his experiences at a bar. The Court need go no further to dismiss Talbot's defamation claim against TNF.[4]

**Respondeat Superior**: Rather than plausibly plead publication, Talbot seeks to hold TNF liable for Ainuu's speech under the doctrine of *respondeat superior*. The Complaint, however, does not allege that Ainuu is a TNF employee. While Talbot makes a single, passing claim that Ainuu was "acting with the scope of his employment," Compl. ¶ 9, he otherwise repeatedly acknowledges that the relationship between TNF and Ainuu is one only of "sponsorship." *See id.* ¶¶ 1, 17, 31, 53, 104, 116. Talbot's sole "[t]hreadbare," "conclusory" statement does not satisfy the Rule 12 plausibility standard, which requires factual allegations to rise

---

[4] Burleson's "re-share" of one of Ainuu's posts, without any commentary, Compl. ¶ 67, is not republication as a matter of law. *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) ("[C]opying [a print] article by a reader—even for wide distribution—does not constitute a new publication. The equivalent occurrence should be treated no differently on the Internet." (cleaned up)); *Clark v. Viacom Int'l*, 617 F. App'x 495, 505 (6th Cir. 2015) (same, citing *Jankovic*); *Crosswhite v. Reuters News & Media*, 2021 U.S. Dist. LEXIS 246628, at *6-7 (W.D. Va. Dec. 28, 2021) (Reuters employee's tweet linking to article *and* adding commentary still not republication) (citing *Lokhova v. Halper*, 995 F.3d 134, 142-44 (4th Cir. 2021)).

above the "speculative level." *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In *Lokhova v. Halper*, for example, the plaintiff sought to hold NBC vicariously liable for the speech of one of its contributors, Malcolm Nance, who tweeted the challenged statements on his personal account. 441 F. Supp. 3d 238, 244, 248 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021). The plaintiff alleged that "at all times relevant …, NBCUniversal/MSNBC acted by and through its authorized agents, including Nance," and that Nance "is the chief terrorism analyst on MSNBC," "a regular contributor to the business of MSNBC," "maintains and operates an official Twitter account on which he conducts the business of NBC/MSNBC," and posted the tweets "during normal business hours." *Id*. at 263-64 (cleaned up). The complaint also cited Nance's Twitter profile biography, which stated "US Intelligence +36 yrs. Expert Terrorist Strategy, Tactics, Ideology. Torture, Russian Cyber! NYT Bestselling Author, Navy Senior Chief/Jedi Master, NBC/MSNBC." *Id*. at 264 (cleaned up). These facts, the district court concluded, at best suggested Nance "holds himself as an agent of MSNBC," but did not establish an employment relationship, leading the Court to dismiss. *Id*.

So too here. At most, Talbot alleges that Ainuu is "a paid climber and brand ambassador" for TNF; TNF's website identifies him as a sponsored athlete; and

Ainuu's Instagram bio tags TNF's account. Compl. ¶¶ 1, 31, 33.[5] Meanwhile,

documents attached to and incorporated by reference in the Complaint confirm that

Ainuu is an independent contractor. For example, TNF's SEC filing differentiates

between employees and sponsored talent with whom the company has

"sponsorship contracts," indicating their limited scope. Compl. Ex. 1 at 8, 14. Like

MSNBC in *Lokhova*, TNF is just one of several entities tagged in Ainuu's

Instagram bio—toward the end of a long list of self-descriptors—and he has

published several posts tagging other companies, some of which are TNF

competitors. *See, e.g.*, Walker Decl. Ex. G. Finally, one of the articles cited in the

Complaint notes that Ainuu works in a local Bozeman restaurant to support

himself. *Id*. Ex. D. In other words, Talbot's own pleadings demonstrate Ainuu is an

independent contractor. The Court need not accept Talbot's suggestion to the

contrary as true. *See Openiano*, 829 F. App'x at 830.

Because Talbot relies on a theory of *respondeat superior*, but Ainuu is not a

TNF employee, Talbot's defamation claim against TNF fails. *See Kelley v.*

*Howard S. Wright Constr.*, 582 P.2d 500, 505 (Wash. 1978) ("one who engages an

independent contractor" is "not liable for injuries … resulting from their work");

---

[5] While the Complaint also claims that Ainuu is a "full-time professional climber on the North Face team," as explained above, *supra* n.3, the video from which this allegation is purportedly taken does not contain such a statement. As such, the Court properly disregards it.

*Restatement (Second) of Torts* § 409 ("the employer of an independent contractor is not liable for … harm caused to another by an act … of the contractor").

**Agency Theory:** Even assuming *arguendo* that that an agency theory of vicarious liability were viable *and* that Ainuu were deemed TNF's agent for at least some purposes, it simply is not the law that a principal is liable for all speech by its employees or agents, no matter where or how made. *Lokhova*, 441 F. Supp. 3d at 264 ("regardless of … whether Nance is an NBCUniversal employee or agent," holding an employer "liable for every tweet issued by one of its employees or agents," without more, "would lead to undesirable consequences"). Indeed, the Fourth Circuit ruled that, even if acts by one's agent could in theory establish liability, the "only reasonable conclusion is that Nance was operating his Twitter account in his personal capacity and not with the actual or apparent authority of NBCUniversal." *Lokhova*, 995 F.3d at 147. So too here.

Talbot has not alleged—and cannot allege—that Ainuu made the Challenged Statements with TNF's actual or apparent authority. Rather, Ainuu's posts were made well outside of business hours, on his personal account, about his take on a late-night interaction at a bar. *See* Compl. ¶¶ 64-68, 79-81. The Challenged Posts—none of which tag, mention, or promote TNF or its products—do not further TNF's business interests. *See id*. At most, Talbot alleges that Ainuu's comments were consistent with "social justice" views espoused by TNF, but such

17

parallel conduct does not establish concerted action or agency. *See, e.g.*, *Twombly*, 550 U.S. at 556-57.

As the Fourth Circuit eloquently put it in another case,

> [i]t is difficult to see how employers could prevent all offensive or defamatory speech at the proverbial watercooler without transforming the workplace into a virtual panopticon. For all its undoubted value, *respondeat superior* and the resultant fear of liability should not propel a company deep into the lives of its workers whose speech interests deserve respect.

*Garnett v. Remedi Seniorcare of Va.*, 892 F.3d 140, 144 (4th Cir. 2018). Because Talbot has not and cannot plausibly allege that TNF either published or is somehow vicariously responsible for the posts, his defamation claim against TNF must be dismissed with prejudice.

**B.    The Challenged Statements are Absolutely Protected Expressions of Opinion.**

Talbot's defamation claims fail against *both* Defendants for the independent reason that the Challenged Statements are protected expressions of opinion. In *Milkovich v. Lorain Journal*, the Supreme Court explained that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." 497 U.S. 1, 20 (1990). Washington courts likewise recognize that "expressions of opinion are protected and thus are not actionable," both "under the First Amendment," *Camer v. Seattle Post-Intelligencer*, 723 P.2d 1195, 1201 (Wash. 1986), and under

Washington "[c]ommon law principles," *Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986); *see also McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 49, 330 Mont. 48, 125 P.3d 1121 (same under Montana law). As a matter of both federal constitutional and state substantive law, Ainuu's statements were absolutely protected opinion.

Whether a challenged statement is one of fact or opinion is a question of law for the court. *See Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); *Robel v. Roundup Corp.*, 59 P.3d 611, 621-22 (Wash. 2002). Under the First Amendment, courts must examine the "totality of the circumstances," including: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Herring Networks v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021). Washington courts consider similar factors in determining whether a statement is protected opinion under state law. *See Dunlap*, 716 P.2d at 848.

Under both frameworks, the court looks at the ***content*** of the statements, including whether they used loose, figurative language and are susceptible to being proven true or false, and their surrounding ***context***, including the medium used and recipient audience (here, Instagram).

19

### 1.   The Content: Courts routinely treat allegations such as those here as protected expressions of opinion.

Talbot must prove that the Challenged Statements—essentially, that Talbot is a racist who tried to fight with Ainuu, *see* Compl. ¶ 105—are false. But to be false, a statement must be factual. Courts around the country have held that statements like those here are non-actionable statements of opinion. *See Dodge v. Evergreen Sch. Dist. No. 114*, 2020 U.S. Dist. LEXIS 135581, at *17 (W.D. Wash. July 30, 2020) (dismissing defamation claim and denying leave to amend as futile because "whether someone is racist … is not a factual question," but "a subjective matter not open to conclusive proof one way or the other"); *Squitieri v. Piedmont Airlines*, 2018 U.S. Dist. LEXIS 25485, at *12-13 (W.D.N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false.") (collecting cases); *Ratajack v. Brewster Fire Dep't*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (statement "that Plaintiff was a racist … is nonactionable opinion"); *Forte v. Jones*, 2013 U.S. Dist. LEXIS 39113, at *15 (E.D. Cal. Mar. 19, 2013) ("[T]he allegation that a person is a 'racist' … is not actionable because the term 'racist' has no factually-verifiable meaning."); *Edelman v. Croonquist*, 2010 U.S. Dist. LEXIS 43399, at *17-18 (D.N.J. Apr. 30, 2010) ("The … characterization of [plaintiffs] as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429

(E.D. Pa. 2000) (statement that plaintiff was racist was perhaps "unflattering, annoying and embarrassing" but also "non-fact based rhetoric"). This case is no different.

The Complaint all but admits the subjective nature of Ainuu's accusations of "racism," noting, for example, that "Ainuu's philosophy of using his public platform to speak out against *what he defines as racism* aligns with North Face's use of its public platform to speak out against *what it defines as racism*." Compl. ¶ 45 (emphases added). Thus, Talbot himself recognizes there are varying and imprecise definitions about what is "racist." Particularly in circumstances involving one person's judgment surmising another's motivations, such an allegation is not understood as a statement of fact. *See Partington*, 56 F.3d at 1156 ("If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, … the statement is not actionable.").

Likewise, Ainuu's perception that Talbot "tried to fight him" arose in the context of a heated, charged encounter, laced with perceived racial undertones, and is considered in that light. *See Steam Press Holdings v. Haw. Teamsters & Allied Workers Union, Local 996*, 302 F.3d 998, 1006 (9th Cir. 2002) (In "a heated and volatile setting, even seemingly 'factual' statements take on an appearance more closely resembling opinion than objective fact"). Ainuu's claim that Talbot's statements and demeanor was an invitation to fight is properly understood as

expressing his "interpretation[]" of a situation "that bristled with ambiguities." *See Time v. Pape*, 401 U.S. 279, 290 (1971); *see also Bose Corp. v. Consumers Union*, 466 U.S. 485, 512 (1984) ("description of what [the author] had actually perceived" understood as opinion); *Hunter v. Hartman*, 545 N.W.2d 699, 707 (Minn. Ct. App. 1996) (citing *Time* and *Bose* in finding statements on talk radio show were nonactioanble opinion and stating, "remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of 'falsity' is possible in such circumstances").

This is underscored by Ainuu's use of "loose" or "figurative" language, including emojis, which further "negate[s] the impression" that he was offering a dry recitation of facts. *Milkovich*, 497 U.S. at 21; *Knievel*, 393 F.3d at 1075 (opinion where "the author used 'loose, figurative, and hyperbolic' speech throughout"). Indeed, such loose, emoji-laden language can transform into opinion statements that, in isolation, might sound factual or verifiable. *See Herring*, 8 F.4th at 1160 (statement that network "literally is paid Russian propaganda" was, in context, protected opinion despite use of "literally" and allegation of payment that was otherwise "susceptible of being proven true or false"); *Clifford v. Trump*, 339 F. Supp. 3d 915, 926 (C.D. Cal. 2018) (even though tweet accusing plaintiff of lying was "verifiable as false," in context, its "incredulous tone" which was

"pointed, exaggerated, and heavily laden with emotional rhetoric," made it non-factual), *aff'd*, 818 F. App'x 746 (9th Cir. 2020).

The Sixth Circuit recently followed this approach in affirming a judgment on a defamation claim arising out of an alleged confrontation between a Native American man, Nathan Phillips, and a MAGA-hat-wearing, white student, Nicholas Sandmann. *See Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 321 (6th Cir. 2023). The interaction between Phillips and Sandmann went viral, and several media outlets quoted Phillips' description of the encounter, including that Sandmann "just blocked my way and wouldn't allow me to retreat." *Id*. at 323. The question was whether Phillips' statements, known as the "blocking statements," were verifiable statements of fact or protected opinion. *Id*. at 323, 329-30. The Sixth Circuit ruled that, because "the blocking statements here reflect Phillips's perception of Sandmann's intent," they were pure opinion. *Id*. at 331. The Court emphasized that "there is no bright-line rule that statements based on sensory perceptions are necessarily factual"; indeed, the statements were "all dependent on perspective" and therefore protected opinion. *Id*. at 330, 332.

Ainuu's followers would likewise understand the challenged Instagram posts to convey his perception of Talbot's statements and demeanor. Indeed, both Ainuu's posts themselves and their context (discussed below) confirm that he shared them "to offer [his] personal viewpoint" and that readers would view them

23

to "learn of [his] personal perspective," rather than to obtain a "dry description of the facts." *Partington*, 56 F.3d at 1153.[6]

In these circumstances, the law is clear that such statements, expressing his perception of Talbot's conduct and motives—including that they were racist and conveyed physical menace—are protected expressions of opinion.[7]

>   2.   ***The Context: The use of Instagram underscores that the Challenged Statements are non-actionable expressions of opinion.***

As then-Judge Kennedy explained, a statement's context is often "determinative that a statement is opinion and not fact." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (asking whether plaintiff was a "Nazi war criminal" was, in context, protected opinion). The medium on which Ainuu posted the Challenged Statements and the audience to whom they were published further compel the conclusion that the statements are non-actionable opinion. *See Dunlap*, 716 P.2d at 848.

---

[6] Talbot does not challenge Ainuu's other subjective characterizations of the encounter—for example, that Talbot "squared up to" him and "got right in [his] face like this," *compare* Compl. ¶ 65 *with id*. ¶ 84 (list of Challenged Statements). Not only are those unchallenged statements protected opinions for the same reason, but they form part of the context for the Challenged Statements and further negate the impression that Ainuu was communicating unvarnished statements of fact.

[7] As explained above, *supra* n.4, Burleson's repost does not constitute republication, but even if it did, it would constitute non-actionable opinion for similar reasons as those applicable to Ainuu's underlying post.

Multiple courts have identified Instagram and similar platforms as fora that "convey[] a strong signal to a reasonable reader that the statements are [a] defendant's opinion." *Jevremovic v. Courville*, 2023 U.S. Dist. LEXIS 139440, at *17 (D.N.J. Aug. 10, 2023); *see also Pelkowski v. Hovermann*, 2021 U.S. Dist. LEXIS 259784, at *12 (E.D.N.Y. Sept. 9, 2021) (collecting cases). Instagram itself describes its platform as a "place for inspiration and expression," where people share their experiences and perspectives, including to "condemn, raise awareness, or educate" about "important" events. Walker Decl. Ex. H. Indeed, social media is the Internet-era equivalent to talk radio, a free-wheeling medium courts have found is rife with "the often exaggerated and uncareful exchange of vehemently held opinions," such that the audience "understand[s] the atmosphere of overstatement and 'take[s] such railings with a grain of salt.'" *Hunter*, 545 N.W.2d at 709; *see also Gardner v. Martino*, 563 F.3d 981, 988 (9th Cir. 2009) (accusation of "lying" was protected opinion in context of "a radio talk show program" that included "drama, hyperbolic language … and heated controversy").

Because both the content and the context of Ainuu's Instagram posts confirm that they are nonactionable expressions of opinion, Talbot's defamation claims should be dismissed with prejudice.

### III.   TALBOT′S TORTIOUS INTERFERENCE CLAIMS SIMILARLY FAIL AS A MATTER OF LAW.

Talbot's tortious interference claims are based exclusively on Ainuu's allegedly defamatory statements about him. As the Supreme Court has held, causes of action arising out of speech—however styled—are subject to the panoply of constitutional limits on defamation claims. *See, e.g.*, *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988). In other words, because Talbot has not pleaded (and cannot plead) a plausible defamation claim, his tag-along claims must be dismissed.

His claims also fail on the merits. Under Washington law, tortious interference requires, among other things, "an improper purpose or … means" and "resultant damage." *Greensun Grp. v. City of Bellevue*, 436 P.3d 397, 405 (Wash. Ct. App. 2019) (cleaned up); *see also Wingfield v. Dep't of Pub. Health & Hum. Servs.*, 2020 MT 120, ¶ 8, 400 Mont. 70, 463 P.3d 452 (same under Montana law). *First*, Talbot's failure to state a viable defamation claim necessarily means any interference was neither tortious nor improper.

*Second*, Talbot cannot show that OR fired him *as a result of* Ainuu's speech. The "resultant damage" element requires both factual and legal causation. *Hoffer v. State*, 755 P.2d 781, 791 (Wash. 1988). According to Talbot, OR terminated him "because he 'showed poor judgment, in [his] actions in Bozeman, both ***prior to*** and during [the] incident at the bar." Compl. ¶ 77 (emphasis added); *see* Talbot Decl.

26

¶ 16. Because Talbot declares, under penalty of perjury, that OR terminated him based on conduct "prior to" any encounter with Ainuu, he cannot plausibly allege the required "but for" causation.

## IV.   TALBOT'S PUNITIVE DAMAGES CLAIM ALSO FAILS AS A MATTER OF LAW.

Finally, even if Talbot's tort claims survived, his claim for punitive damages cannot. In Washington, plaintiffs are *squarely foreclosed* from recovering punitive damages. *See Taskett v. KING Broad.*, 546 P.2d 81, 86 (Wash. 1976); *Maison de France v. Mais Oui!*, 108 P.3d 787, 799 (Wash. Ct. App. 2005).

Even if they were not entirely foreclosed by state law, to recover punitive damages Talbot is required under the First Amendment to plead facts that, if proven, would constitute clear and convincing evidence that the challenged statements were published with actual malice. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Actual malice requires that, at the time of publication, the defendant had "knowledge that [the statement] was false" or published it "with a high degree of awareness of [its] probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 728, 731 (1968). Here, where TNF only learned about the statements after publication, Talbot has not and cannot plead actual malice as to TNF.[8]

---

[8] Nor could any cobbled-together actual malice argument against Ainuu be imputed back to TNF. *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1303 (D.C. Cir. 1996); *Price v. Viking Penguin*, 881 F.2d 1426, 1446 (8th Cir. 1989); *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983).

27

## V.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Washington's Anti-SLAPP Act requires dismissal with prejudice. *See* RCW 4.105.060. But even under Rule 12, because no amount of repleading will cure the Complaint's many deficiencies, dismissal should be with prejudice. *Herring*, 8 F.4th at 1160-61 (affirming order granting anti-SLAPP motion and dismissing with prejudice where challenged statement was protected opinion); *Clifford*, 818 F. App'x at 750 (same); *Gardner*, 563 F.3d at 991-92 (affirming denial of leave to amend); *Partington*, 56 F.3d at 1162 (same). Not only is amendment futile, but dismissal with prejudice would vindicate the important federal and state interests in shielding protected speech from protracted and ultimately meritless litigation.[9]

### CONCLUSION

TNF respectfully requests that the Court dismiss the Complaint with prejudice and award its attorneys' fees and costs under RCW 4.105.090, affording the parties sixty (60) days to negotiate their amount and, if unsuccessful, directing TNF to file a statement of them for review by the Court.

---

[9] As required, on October 27, TNF provided Talbot written notice of its intent to move for relief under the Washington Anti-SLAPP Act and would seek recovery of its attorneys' fees and costs. *See* RCW4.105.020; Walker Decl. Ex. I.

Respectfully submitted this 18th day of December, 2023.

By: */s/ Peter Michael Meloy*
Peter Michael Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, MT 59624
Telephone: (406) 442-8670
Email: mike@meloylawfirm.com

By: */s/ Leita Walker*
Leita Walker*
Isabella Salomão Nascimento*
**BALLARD SPAHR LLP**
2000 IDS Center, 80 S Eighth St.
Minneapolis, MN 55402-2119
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
Email:walkerl@ballardspahr.com
Email:salomaonascimentoi@ballardspahr.com

Seth D. Berlin*
**BALLARD SPAHR LLP**
1909 K St., NW
12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
Email: berlins@ballardspahr.com

*Admitted *pro hac vice*

*Attorneys for Defendant VF Outdoor, LLC d/b/a The North Face*

29

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing **Memorandum of Law in support of**
**Combined Motion to Dismiss and Special Motion for Expedited Relief**
complies with Local Rule 7.1, containing 6,496 words, excluding only those items
listed in the rule.


/s/ *Leita Walker*
Leita Walker


## **CERTIFICATE OF SERVICE**

I hereby certify that on 18 December 2023, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system, which will send notification
of such filing to all counsel of record pursuant to the Local Rules.


/s/ *Leita Walker*
Leita Walker