James H. Goetz
Jeffrey J. Tierney
**GOETZ, GEDDES & GARDNER, P.C.**
35 North Grand Ave.
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:    406-587-0618
Fax:   406-587-5144
Email: jim@goetzlawfirm.com
        jtierney@goetzlawfirm.com

**Attorneys for Defendant Manoah Ainuu**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | |
|---|---|
| JOHNATHAN TALBOT,<br><br>                    Plaintiff,<br><br>        v.<br><br>MANOAH AINUU, and THE NORTH FACE APPAREL CORP., A Delaware Company,<br><br>                    Defendants. | Cause No. 2:23-CV-00066-BU-BMM<br>Hon. Brian Morris<br><br><br>Manoah Ainuu's Brief in Support of Motion to Dismiss and Special Motion for Expedited Relief |

This case is governed by Washington law, which affords substantive protections against meritless lawsuits—like this one—that seek to deter, punish, and otherwise chill free speech. It is well-settled that whether someone is "racist" is a matter of opinion. Taken in proper context, Manoah Ainuu's social media posts about Johnathan Talbot were clearly expressions of opinion, value judgment,

and subjective assessment of the intentions behind Mr. Talbot's words and behaviors. Understandably, Talbot may find Ainuu's statements unpleasant or offensive, but they are fundamentally protected speech under both federal and state law and therefore cannot sustain a defamation claim as a matter of law.

The tortious interference claim is duplicative of the defamation claim and is not independently cognizable. The Court should dismiss it for the same reasons.

Finally, the Court should dismiss Talbot's punitive damage claim for lack of an underlying tort claim and because Washington disallows punitive damages.

TNF's and Ainuu's motions should be granted.

## I.     LEGAL FRAMEWORK AND CHOICE OF LAW

Mr. Ainuu agrees with the legal framework and choice-of-law analysis laid out by TNF, including that Talbot's claims are governed by Washington state law and subject to Washington's Anti-SLAPP statute, R.C.W. § 4.105, *et seq*.

A choice-of-law inquiry has "two levels." *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016) (citations omitted). "First, [the court] must determine whose choice of law rules govern. Second, applying those rules, [the court] determine[s] whose law applies." *Id.*

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Id.* Montana follows the "most significant relationship" test set forth in the

Restatement (Second) of Conflict of Laws. *Phillips v. GMC*, 2000 MT 55, ¶¶ 21–23, 995 P.2d 1002. The Restatement provides that, in a defamation case concerning a publication to two or more states, the state with the most significant relationship is usually the state of the plaintiff's domicile, "even though some or all of the defamer's acts of communication were done in another state[.]" *Id.* § 150, cmt. e; *see Clifford v. Trump*, 339 F.Supp.3d 915, 921 (C.D. Cal. 2018) (the law of plaintiff's domicile controls in disputes involving "publication of statements in online fora" that cross state lines), *aff'd,* 818 Fed. App'x 746 (9th Cir. 2020)*, cert. denied*, 141 S. Ct. 1374 (2021); *Hanley v. Trib. Pub'g Co.*, 527 F.2d 68, 70 (9th Cir. 1975); *Sarver*, 813 F.3d at 898; Robert D. Sack, 2 *Sack on Defamation* § 15.3.2 (3d ed. 2003).

Thus, in this case involving a multi-state publication and a Washington plaintiff, Washington law controls and its Anti-SLAPP statute applies. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (state Anti-SLAPP statute applied in a diversity action because the statute's "objective was manifestly substantive" and failing to apply it would encourage forum-shopping, contrary to the aims of the *Erie* doctrine); *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179 (9th Cir. 2016); *see*, *e.g.*, *Ratner v. Kohler*, No. 17-542, 2018 WL 1055528 (D. Haw. Feb. 26, 2018) (applying the law of the plaintiff's domicile and its Anti-SLAPP statute,

rejecting plaintiff's attempt to invoke the law of the forum state).

**II.      TALBOT'S DEFAMATION CLAIM SHOULD BE DISMISSED.**

     **A.      Talbot cannot carry his burden to establish falsity and cannot otherwise state a legally cognizable claim because Ainuu's statements were matters of subjective opinion. Read in context, they are not "provably false."**

Statements of opinion are not actionable defamation. A publication must communicate a "provably false" defamatory fact or impression to be actionable. *Dunlap v. Wayne*, 716 P.2d 842, 847–48 (Wash. 1986); *Mohr v. Grant*, 108 P.3d 768, 775 (Wash. 2005); *Duc Tan v. Le*, 300 P.3d 356, 370 (Wash. 2013) (citing the United States Supreme Court's statement that "there is no such thing as a false idea" as a guiding principle of Washington's free speech jurisprudence).

"The determination of whether a communication is one of fact or opinion is a question of law for the court." *Camer v. Seattle-Poster Intelligencer*, 723 P.2d 1195, 1201–02 (Wash. App. 1986).

TNF correctly argues, and Ainuu reiterates, that none of his statements convey provably false facts. Ainuu's comments were value judgments and expressions of opinion about Talbot's character and demeanor, the truth or falsity of which cannot be objectively determined.

Courts have consistently found that whether someone is "racist" is a subjective concept which is not provably false and, therefore, a matter of opinion.

In addition to the abundant authorities offered by TNF, *see*, *e.g.*, *Rapaport v. Barstool Sports, Inc.*, No. 18-Civ-8783, 2021 U.S. Dist. LEXIS 59797 (S.D.N.Y. Mar. 29, 2021) (social media posts and podcasts calling the plaintiff "racist," among other insults, were "inherently subjective assessments . . . incapable of being proven objectively false."); *Blake & Ors v. Fox,* EWHC 3542 (Engl. and Wales High Ct., Nov. 1, 2022) (Twitter post that the subject was "undeniably a racist" was forceful rhetoric but the use of strong words does not "convert the expression of an opinion that the [subject] is a racist into an allegation of fact." "[T]here are some words that almost always signify that they represent the person's opinion. '*Racist*' is quintessentially one of those words."), *aff'd*, EWCA Civ. 1000 (Engl. and Wales Ct. of App. Civ., Aug. 25, 2023) (the term "racist" encompasses a broad range of subjective judgments and tends to be used in "evaluative way"); *Nelson v. S. Pov. Law Ctr.*¸ No. 4:18-895, 2019 WL 12288374 (W.D. Mo. Jul. 31, 2019) (calling the plaintiff a racist "Neo-Nazi" was subjective opinion); *Cummings v. City of N.Y.*, No. 19-Civ-7723, 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) (falsity is the "*sine qua non* of a libel" and when falsity cannot be proved, as with an accusation of racism, there is no claim)**;** *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (accusation that plaintiff "hate[s] Jews" was opinion and invective, not factual); *Starks v. Tula Life, Inc.*, ____ F.Supp.3d ____, 2023 U.S.

Dist. LEXIS 128760 (D. Neb. Jul. 26, 2023) (that someone is "racist" is not

"capable of proof of disproof" and expresses "subjective impressions" akin to

opining that someone is sexist, unprofessional, etc.); *cf. Brimelow v. N.Y. Times Co.*,

No. 20-Civ-222, 2020 WL 7405261, at *9 (S.D.N.Y. Dec. 16, 2020) (accusing

someone of being a "white nationalist" is "non-actionable opinion commentary").

The inference that a word or phrase is a matter of opinion—not fact—is

particularly strong when it embodies an emotionally charged concept with an

imprecise meaning and usage. *See Buckley v. Littell*, 539 F.2d 882, 893–94 (2d Cir.

1976) (the term "fascist," although potentially inflammatory, could not be

defamatory because it was a matter of subjective interpretation what the word

means and whether the subject fit the bill).

"Racist" is one such imprecise and value-laden word. *See Stevens v. Tillman*,

855 F.2d 394 (7th Cir. 1988). So too for Ainuu's statements that Talbot tried to

fight him, given the highly-charged environment in which Talbot's nonverbal

conduct took place, as explained in TNF's brief and illustrated by *Sandmann v.

New York* Times, 78 F. 4th 319 (6th Cir. 2023).

A reasonable audience will not infer that calling someone a "racist"

necessarily means they are a "supporter of slavery or segregation, or a fomenter of

hatred among the races." *Stevens*, 855 F.2d at 402. The term is employed "much

more loosely" in modern usage." *Id.* For example, as was clearly the case here when Ainuu's statements are taken in context, one might say "'[he] is a racist' to mean '[he] is condescending to me, which must be because of my race because there is no other reason to condescend . . . .'" *Id.*; *see* Doc. 1, ¶¶ 1, 101.

Meanings of this sort are expressions of opinion—not objective, defamatory fact—and "fit comfortably within the immunity for name-calling." *Id.*; *accord Gruber v. Bruce*, 643 F. Supp. 824, 834 (M.D. Tenn. 2022); *see also*, *e.g.*, *Edelman v. Croonquist*, No. 09-1938, 2010 WL 1816180 (D.N.J. May 4, 2010) (calling plaintiffs "racists" was an unprovable "subjective assertion" and, in context, could not be reasonably construed as an accusation that they support racial subjugation but that they "have treated [the defendant] poorly, and she believes it is on account of her ethnic background.").

There is no provably false and defamatory connotation in Mr. Ainuu's statements. His impressions that Mr. Talbot was racist, or that Talbot treated him poorly, or tried to fight him, based on considerations of race or ethnicity, are unverifiable subjective assessments and value judgments that dwell in the realm of opinion. It is well-settled law that such statements are not actionable because they are not assertions of provably false fact.

Under Washington law, truth is not just a defense. A defamation plaintiff has

the burden to make a prima facie showing of every element of the claim, including falsity of the allegedly defamatory remarks. *Sisley v. Seattle Sch. Dist. No. 1*, 286 P.3d 974, 978 (Wash. App. 2012).[1] What proof can Talbot offer to prove he is not a racist, as would be necessary for him to establish that Ainuu's statements are false? There is none because the concept is subjective and inherently unverifiable. *See, e.g., Rapaport*, 2021 U.S. Dist. LEXIS 59797 at *34 (proffered evidence that Mr. Rapaport was married to a Black woman, that he does not believe he uses the issue of race for personal benefit, and that he has friends and associates who are people of color, was incompetent "to falsify the assertion" of racism. It "simply does not establish by objective proof that the challenged representations were false.").

The bottom line is this: Mr. Ainuu perceived that he had a negative interaction with Mr. Talbot that Ainuu thought was racially motivated. He took to social media to express his subjective value judgments about the encounter, the truth or falsity of which is not susceptible of objective proof. Even if Ainuu's opinions are inflammatory, disparaging, or upsetting to Mr. Talbot, they are not provably false so they are not defamatory as a matter of law.

––––––––––––––

[1] This is also true as a matter of federal constitutional law, which places this burden on the plaintiff in order to avoid chilling protected speech. *See Phila. Newspapers v. Hepps*, 475 U.S. 767, 777 (1986).

**B.      Context confirms that there is no actionable defamation.**

As TNF also correctly explains, dismissal of Talbot's claims on grounds of opinion is also compelled by context.

Courts consider the "totality of the circumstances" in distinguishing between fact and opinion including the language used, its tone and tenor, the medium and platform, audience, and the specific and broader context of the publication. *Jinni Tech Ltd. v. Red.Com., Inc.*, No. 21-35967, 2022 U.S. App. LEXIS 25303, at *2 (9th Cir. Sept. 2, 2022) (quoting *Dunlap*, 716 P.2d at 848); *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021).

These considerations often signal that a reasonable audience would not take the publication as an assertion of literal truth or would be "aware of the subjective biases of the speaker" and "prepared for" loose and colorful language, heated rhetoric, and exaggeration. *Dunlap*, 716 P.2d at 848; *see also Camer*, 723 P.2d at 1202 ("Even apparent statements of fact may assume the character of opinions, and thus be privileged" in such circumstances); *see also* Restatement (Second) of Torts, § 566 Expressions of Opinion (statements of apparent fact may take on the character of opinion when the speaker has obviously "lost his temper" and is "giving vent to insult," in contrast with carefully chosen words published after

much reflection, curation and careful editing); *Herring*, 8 F.4th at 1157.

There are many such context cues in this case.

First and foremost, common experience tells us that social media platforms are not akin to books, newspapers, or broadcast media and serve a different purpose. *See Jinni Tech*, 2022 U.S. App. LEXIS 25303, at *2 ("Washington courts have recognized that the internet is a medium in which individuals often express opinions." (citing *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 136 (Wash. App. 2015)); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 44 (N.Y. App. 2011) ("The culture of Internet communications, as distinct from that of print media . . . has been characterized as encouraging a 'freewheeling, anything-goes writing style'" where readers naturally "give less credence to allegedly defamatory remarks" ); *Ganske v. Mensch*, 480 F.Supp.3d 542, 552 (S.D.N.Y. 2020) (the use of an informal social media platform such as Twitter "conveys a strong signal to a reasonable reader" to expect expressive speech and opinion); *Rollins Ranches, LLC v. Watson*, No. 0:18-cv-3278, 2021 WL 5355650 (D.S.C. Nov. 17, 2021) (social media is rife with casual, emotive and offensive speech and does not invite readers to attach "the same level of credence" as they might to formal statements in other settings, so Facebook posts alleging animal abuse were not defamatory); *Murray v. Pronto Install., Inc.*, No. 8:20-cr-824, 2020 WL 6728812 (M.D. Fla. Nov. 16, 2020)

Similarly, the use of "vulgarities and emotional language" is a badge of informality that signals nonactionable opinion. *Jinni Tech*, 2022 U.S. App. LEXIS 25303, at *2 (citing *Robel v. Roundup Corp.*, 59 P.3d 611 (Wash. 2002)).

Beyond these "immediate contextual indicators," the Court should consider the broader context and circumstances of the publication. *Gardner*, 563 F.3d at 987; *Herring*, 8 F.4th at 1154. For example, the Instagram stories in this case made clear to the audience that the conflict arose during a night of drinking at a rowdy watering hole. Doc. 1, p. 18, ¶ 65.

Mr. Ainuu's personal circumstance also supply important context. He is a person of color, the son of first-generation immigrant parents from Ethiopia and Samoa.[2] As a Black man in a predominantly white community and profession, Ainuu is keenly aware of not only acts of overt racism but also more subtle forms of racial bias of discrimination. *See* Doc. 1, p. 11, ¶ 36. His Instagram posts offer obvious and important context in this regard. He does not purport to be a journalist but an advocate and uses his social media as a platform to express his subjective opinions on matters of public concern. *See* Doc. 1, ¶ 46, Ex. 5. It is clear, in this case, that Ainuu was speaking emotionally about a matter personal to him as

_____

[2] *See* https://www.thenorthface.com/en-us/about-us/athletes/manoah-ainuu

someone concerned about diversity and inclusion. *Id.* at 35–36, ¶¶ 84(c)–(e) ("My work is to change the outdoor industry"). That is to say, any reasonable reader would be "aware of [his] subjective biases" and "prepared for" fiery rhetoric on this topic. *Dunlap*, 716 P.2d at 848.

In summary, taken in proper context, Mr. Ainuu's remarks were plainly expressions of protected opinion and not defamatory fact. His Instagram stories bear all of the recognized hallmarks of the kind of loose, expressive speech that social media is known for. No reasonable audience could construe a series of hashtag and emoji-laden Instagram posts—at 3 a.m., after a night at the bar—as anything more than heated, expressive speech. The individual and broader social context of the statements underscores this conclusion.

## III. TALBOT'S TORTIOUS INTEFERENCE CLAIM SHOULD ALSO BE DISMISSED.

Ainuu also agrees with TNF that Talbot's tortious interference claim is the same cause of action in different trappings and should be dismissed for the same reasons. *See Nanavati v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96 (3d Cir. 1988) (if speech is protected, the same constitutional guarantees apply "regardless of the nature of the cause of action" or the framing of the pleadings (citing *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988)).

Under Washington law, the substantive allegations define the claim, not the

label the plaintiff attaches to it. So, a plaintiff cannot plead around procedural or

substantive bars to bring disallowed or deficient claims through the back door. *See*

*Bevan v. Meyers*, 334 P.3d 39, 43 (Wash. App. 2014) (it is the "gravamen of the

claim" that determines whether it is subject to Anti-SLAPP law); *Aberdeen Fed.*

*Sav. & Loan v. Hanson*, 794 P.2d 1322, 1324 (Wash. App. 1990) (the substance of

the claim, not the label, determines applicable defenses); *accord Plakorus v. Univ. of*

*Mont.*, 2020 MT 312, ¶ 14, 477 P.3d 311.

Numerous courts, applying similar rationales, have held that tortious

interference claims cannot survive the dismissal of a related defamation claim.

For example, in *Spreadbury v. Bitterroot Pub. Library*, 856 F.Supp.2d 1195,

1201 (D. Mont. 2012), Judge Molloy rejected a defamation claim on its merits then

tossed certain "derivative" or "companion claims" premised on the same facts,

including claims for tortious interference with prospective economic advantage. *Id.*

at 1201. Such claims "cannot succeed as independent causes of action" and "fail if

the predicate claims fail." *Id.* (citing *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9thCir.

1990); *Dworkin v. Hustler Magazine*, Inc., 867 F.2d 1188 (9th Cir. 1989)).

*Ganske, supra,* like this case, involved an allegedly defamatory social media

post which the defendant shared with the plaintiff's employer by "tagging" the

employer's username, allegedly in order to interfere with plaintiff's employment

and get him fired. 480 F.Supp.3d at 547–48. The plaintiff sued for both defamation and tortious interference. After rejecting the plaintiff's defamation claims for the reasons described above (i.e. because accusing someone of xenophobia, like calling them a racist or a bigot, is a matter of opinion) the court rejected the tortious interference claim which was "duplicative" and not independently actionable. *Id*. at 556. "A defamation cause of action has 'broad reach'" and sweeps in any cause of action where the claimed injury is the consequence of an allegedly unfavorable publication and resultant injury to reputation. *Id*.

For further examples, *see, e.g., ACLU v. Tarel ibn Ziyad Acad.*, No. 9-138, 2009 WL 4823378 (D. Minn. Dec. 9, 2009) ("Tortious interference claims that are duplicative of a claim for defamation are properly dismissed."); *Yoho v. Bank of N.Y. Mellon Corp.*, No. 21-1071, 2022 WL 296637 (3d Cir. 2022) (declining to address tortious interference claim that was "largely duplicative of" a defamation claim); *Evans v. Phil. Newspaper, Inc.*, 601 A.2d 330, 332–33 (Pa. Sup. 1991) (a plaintiff cannot "circumvent" a bar to defamation liability "by merely terming the claim tortious interference when in essence it is one of defamation"); *Masvidal v. U.S. DOJ*, No. 9-61485, 2010 WL 1160619 (S.D. Fla. Mar. 29, 2010) (dismissing "disguised defamation claim" related to alleged libel); *Lokhova v. Halper*, 441 F.Supp.3d 238, 265 (E.D. Va. 2020) (claims that are "inextricably intertwined"

with a defamation claim must rise or fall with that theory), *aff'd*, 995 F.3d 134 (4th Cir. 2021); *Cousins v. Goodier*, 283 A.3d 1140, 1166 (Del. 2022) (where a claim for tortious interference in a defamation action is based on protected speech, the claim is subject to dismissal); *Goldman v. Barrett*, 733 Fed. Appx. 568, 570 (2d Cir. 2018); *Fitzgerald v. Town of Kingston*, 13 F.Supp.2d 119, 127 (D. Mass. 1998); *Couch v. Verizon*, No. 20-2151, 2021 WL 4476698 (D.C. Cir. Sep. 30, 2021); *Shields v. U.S. Bank N.A.*, No. 05-2073, 2005 WL 3335099 (D. Kan. Dec. 7, 2005).

Additionally, Talbot has failed to establish two of the elements of his tortious interference claim, as TNF explains. Talbot fails to articulate any wrongful means, independent of his incognizable defamation theory, or resultant damages.

## IV.   TALBOT'S PUNITIVE DAMAGE CLAIM SHOULD BE DISMISSED.

Finally, the Court should dismiss Talbot's punitive damage claim. As well as failing to set forth a cognizable underlying tort claim for the reasons explained above, Talbot cannot recover punitive damages because they are disallowed under Washington law. *See Pendergrast v. Matichuk*, 379 P.3d 96, 101 (Wash. 2016) (punitive damages are penal in nature and their award "violat[es] public policy unless expressly authorized by statute." (citing *Broughton Lumber Co. v. BNSF Ry.*, 278 P.3d 173 (Wash. 2012))); *Schmalenberg v. Tacoma News*, 943 P.2d 350, 363 (Wash. App. 1997) ("under no circumstances" can punitive damages be recovered

in a Washington defamation case).

## V.   CONCLUSION

Under well-settled law, Mr. Ainuu's statements were matters of subjective opinion that are not actionable. Mr. Talbot cannot prove, as a matter of objective fact, that Ainuu's statements are false so he cannot make out a prima facie case for defamation and has failed to state a claim for defamation upon which relief can be granted. His tortious interference claims are duplicative and should be dismissed for the same reasons. Punitive damages are disallowed.

Ainuu's and TNF's motions should be granted.

DATED this 19th day of December, 2023.

GOETZ, GEDDES & GARDNER, P.C.

Attorneys for Manoah Ainuu

_____
James H. Goetz
Jeffrey J. Tierney

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the formatting

requirements of Local Rule 7.1(d)(2). It contains 3,442 words as calculated by

Microsoft Word, excluding the caption and this Certificate of Compliance.

_____

Jeffrey J. Tierney