MELOY LAW FIRM

Peter Michael Meloy
P.O. Box 1241
Helena, MT 49624
Telephone: (406) 442-8670
Email: mike@meloylawfirm.com

BALLARD SPAHR LLP

Leita Walker
Isabella Salomão Nascimento
2000 IDS Center, 80 S Eighth St.
Minneapolis, MN 55402-2119
Telephone: (612) 371-3211
Email:walkerl@ballardspahr.com
Email:salomaonascimentoi@ballardspahr.com

Seth D. Berlin
1909 K St., NW
12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Email: berlins@ballardspahr.com

*Attorneys for Defendant VF Outdoor, LLC d/b/a The North Face*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| **JOHNATHAN TALBOT,** <br><br> **Plaintiff**, <br><br> **v.** <br><br> **MANOAH AINUU**, *et al.*, <br><br> **Defendants**. | **Case No. 2:23-cv-00066-BMM** |

## REPLY BRIEF IN SUPPORT OF COMBINED MOTION TO DISMISS AND SPECIAL MOTION FOR EXPEDITED RELIEF BY DEFENDANT VF OUTDOOR, LLC d/b/a THE NORTH FACE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

ARGUMENT ........................................................................................2

I.  WASHINGTON LAW, INCLUDING ITS ANTI-SLAPP
    STATUTE, APPLIES .......................................................................2

II. TALBOT FAILS TO STATE A CLAIM FOR DEFAMATION
    AGAINST TNF ...............................................................................6

    A.  TNF Cannot Be Vicariously Liable for the Personal Speech
        of an Independent Contractor ...............................................6

    B.  The Challenged Statements Are Protected Opinion ............................8

CONCLUSION ....................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*American Society of Mechanical Engineers v. Hydrolevel Corp.*,
    456 U.S. 556 (1982)..............................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................7, 8

*Buckles v. BH Flowtest*,
    2020 MT 291, 402 Mont. 145, 476 P.3d 422 ..................................2, 3

*Cane v. O'Neill*,
    2022 U.S. Dist. LEXIS 163463 (D. Mont. Mar. 31, 2022) .................1

*Clifford v. Trump*,
    339 F. Supp. 3d 915 (C.D. Cal. 2018) ................................................4

*Clifford v. Trump*,
    818 F. App'x 746 (9th Cir. 2020) .......................................................3

*Connick v. Myers*,
    461 U.S. 138 (1983)............................................................................5

*Cooper v. Franklin Templeton*,
    629 F. Supp. 3d 223 (S.D.N.Y. 2022) ..............................................10

*Daniels v. Loop Interactive Grp.*,
    2015 Cal. App. Unpub. LEXIS 114 (Jan. 9, 2015)...........................12

*Davis v. Cornely*,
    2021 U.S. Dist. LEXIS 198245 (N.D. Ohio Oct. 13, 2021).............11

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*,
    2008 U.S. Dist. LEXIS 105088 (D. Haw. Dec. 31, 2008) ...............12

*Garnett v. Remedi Seniorcare of Va.*,
    892 F.3d 140 (4th Cir. 2018) .............................................................8

*Herring Networks v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) .............................................................10

*Hyland v. Wonder*,
   972 F.2d 1129 (9th Cir. 1992) ............................................................5

*Jorjani v. N.J. Inst. of Tech.*,
   2019 U.S. Dist. LEXIS 39026 (D.N.J. Mar. 11, 2019) ......................10

*Kamelgard v. Macura*,
   585 F.3d 334 (7th Cir. 2009) ...............................................................4

*Keisel v. Westbrook*,
   2023 UT App. 163 .....................................................................8, 9, 11

*Keller v. Safeway Stores*,
   111 Mont. 28, 108 P. 2d 605 (1940)................................................6, 7

*Knievel v. ESPN*,
   223 F. Supp. 2d 1173 (D. Mont. 2002)......................................2, 3, 10

*Lauf v. Selene Fin.*,
   2023 U.S. Dist. LEXIS 108331 (D. Mont. June 22, 2023) ..................1

*Lloyd v. Facebook*,
   2022 U.S. Dist. LEXIS 180710 (N.D. Cal. Oct. 3, 2022) ...................4

*Lokhova v. Halper*,
   441 F. Supp. 3d 238 (E.D. Va. 2020) ..................................................8

*O'Brien v. City of Saginaw*,
   2011 U.S. Dist. LEXIS 200 (E.D. Mich. Jan. 3, 2011) .....................11

*Olthaus v. Niesen*,
   2023-Ohio-4710 (Ct. App. 2023) ........................................................9

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ...........................................................2, 3

*Project Veritas v. CNN*,
   591 F. Supp. 3d 1322 (N.D. Ga. 2022)................................................4

*Puchalski v. Sch. Dist. of Springfield*,
   161 F. Supp. 2d 395 (E.D. Pa. 2001)............................................10, 11

*Rapaport v. Barstool Sports*,
2024 U.S. App. LEXIS 556 (2d Cir. Jan. 9, 2024)...............................................10

*Ratner v. Kohler*,
2018 U.S. Dist. LEXIS 30761 (D. Haw. Feb. 26, 2018).......................................4

*Robertson v. Ziplocal*,
2012 U.S. Dist. LEXIS 138566 (D. Mont. Sept. 26, 2012).................................6

*Roots v. Montana Human Rights Network*,
275 Mont. 408, 913 P.2d 638 (1996)................................................................11

*Sandmann v. New York Times Co.*,
78 F.4th 319 (2023) .........................................................................................13

**Statutes & Other Authorities**

§ 27-1-802, MCA ...............................................................................................6

Fed. R. Evid. 201 ...............................................................................................4

Montana Const. art. II, § 7 .................................................................................2

RCW 4.105.090.................................................................................................14

*Restatement (Second) of Conflict of Laws* § 6 ...............................................2, 3

*Restatement (Second) of Conflict of Laws* § 145 ..............................................3

*Restatement (Second) of Conflict of Laws* § 146 ..............................................3

*Restatement (Second) of Conflict of Laws* § 150 ..............................................3

U.S. Const. amend. I .......................................................................................2, 3, 5

Plaintiff Johnathan Talbot's Opposition, ECF No. 34 ("Opp."), fails to

address, and therefore concedes, a number of arguments raised by Defendant VF

Outdoor, LLC d/b/a The North Face ("TNF"):

- On **defamation**, he fails to address TNF's arguments that (a) it did not "publish" the Challenged Statements and (b) the actual publisher, Manoah Ainuu, is not a TNF employee. *Compare* TNF's Opening Mem., ECF No. 26 ("Mem."), at 13-14 & n.4 *with* Opp. at 37-41.

- On **tortious interference**, he ignores TNF's argument that he failed to adequately plead causation. *Compare* Mem. at 26-27 *with* Opp. at 36.

- On **punitive damages**—to the extent they are permitted at all—he neither contests that he must plausibly plead actual malice, nor argues that he did so. *Compare* Mem. at 27 & n.8 *with* Opp. at 37.

- And on TNF's request for **dismissal with prejudice**, he neither requests leave to amend nor addresses the futility of doing so. *Compare* Mem. at 28 *with* Opp. 7-42.

On each of these issues, "by failing to respond to [TNF's] argument on the merits,

[Talbot] has admitted the argument is well-taken," *see Lauf v. Selene Fin.*, 2023

U.S. Dist. LEXIS 108331, at *10 (D. Mont. June 22, 2023), and waived his right to

argue otherwise, *see Cane v. O'Neill*, 2022 U.S. Dist. LEXIS 163463, at *32 (D.

Mont. Mar. 31, 2022).

Accordingly, Talbot has conceded away his tortious interference and

punitive damages claims entirely. As for his defamation claim, TNF is not

vicariously liable for Ainuu's posts under an agency theory, and even if it were, his

statements constitute non-actionable opinion under federal, Washington, *and*

Montana law. TNF respectfully requests that the Court dismiss this case with prejudice and, under Washington's Anti-SLAPP Act, award TNF its fees and costs.

## ARGUMENT

## I.    WASHINGTON LAW, INCLUDING ITS ANTI-SLAPP STATUTE, APPLIES.

Talbot's arguments that Washington law, including its Anti-SLAPP Act, does not govern the state law questions here are unavailing.

*First*, Talbot claims that Article II, Section 7 of Montana's Constitution is a "statutory directive … concerning the choice of law" under *Restatement (Second) of Conflict of Laws* ("*Restatement*") Section 6(1), and requires a jury to decide choice of law questions in defamation cases. *See* Opp. at 11-12. But, the Montana Supreme Court has already confirmed that "[t]here is no statutory directive regarding choice of law in Montana for issues sounding in tort," *Buckles v. BH Flowtest*, 2020 MT 291, ¶ 12, 402 Mont. 145, 476 P.3d 422; *see also Knievel v. ESPN*, 223 F. Supp. 2d 1173, 1182 (D. Mont. 2002), *aff'd*, 393 F.3d 1068 (9th Cir. 2005) (recognizing Article II, Section 7 contemplates that preliminary questions of law "must [still] be determined by the Court").

Moreover, tasking a jury with deciding all issues in a defamation case, including choice-of-law, is absurd and would contravene the First Amendment, which requires courts to decide certain preliminary constitutional questions, such as whether a challenged statement is fact or opinion. *See Partington v. Bugliosi*, 56

2

F.3d 1147, 1153 (9th Cir. 1995); *see also Knievel*, 223 F. Supp. 2d at 1182

(Montana Constitution "must yield to the First Amendment").

**Second**, Talbot relies on other general provisions of the *Restatement*, Opp. at

15 (citing §§ 6(1), 6(2), 145, 146), instead of Section 150 which governs multistate

defamation cases. But Montana's Supreme Court has unambiguously instructed

courts to consult "the *specific section of the Restatement that is applicable to the*

*case*." *Buckles*, 2020 MT 291, ¶ 11 (emphasis added). Section 150 directs that, in a

multistate defamation case, the "state of most significant relationship will usually

be the state where the person was domiciled at the time." *Restatement* § 150(2).

Talbot ignores cases like *Clifford v. Trump*, 818 F. App'x 746 (9th Cir. 2020),

which affirmed a ruling that, under Section 150's "most significant relationship"

test, the law of plaintiff's domicile, including its anti-SLAPP statute, governed a

multistate defamation case challenging a tweet.

Instead, Talbot argues that Montana has the most significant relationship

because he previously lived there, Ainuu lives and posted from there, and Ainuu

"intentionally directed" his posts there. Opp. at 16-17. His contentions are

undermined by his own Complaint.

Talbot pleads that he is a Washington resident and moved there for a job

with Outdoor Research ("OR"), a Washington company. Compl. ¶ 8. OR sent him

to Bozeman, and after the incident, promptly recalled Talbot to Washington, firing

him there. *Id.* ¶¶ 54, 70, 74, 77-78. He alleges the crux of his injury is being fired by his Washington employer in Washington. *Id.* ¶¶ 6, 54-56, 74, 77-78, 82, 91, 94-98, 106, 109, 111-21; Opp. at 18 (claiming posts "result[ed] in" Talbot "being fired from the job for which he left Montana"); *id.* at 7, 9, 23 (each focusing on loss of employment in Washington). Today, Talbot continues to reside in Washington, where he purchased a house and collects unemployment.[1] *See Kamelgard v. Macura*, 585 F.3d 334, 341-42 (7th Cir. 2009) (defamation injury principally occurs "where the victim works and lives").

Meanwhile, Ainuu's location when he posted to Instagram is of little significance because what matters is "where plaintiff was injured, that is, [his] domicile." *Project Veritas v. CNN*, 591 F. Supp. 3d 1322, 1328-29 (N.D. Ga. 2022) (cleaned up); *see also Clifford v. Trump*, 339 F. Supp. 3d 915, 921-22 (C.D. Cal. 2018) (omitting any discussion of defendant's location when publishing tweet and rejecting request to apply law of defendant's domicile); *Ratner v. Kohler*, 2018 U.S. Dist. LEXIS 30761, at *12 (D. Haw. Feb. 26, 2018) (applying law of plaintiff's domicile, including anti-SLAPP statute, despite defendant's different location when publishing).

---

[1] *See* GoFundMe, *Help John Talbot* (Aug. 25, 2023), https://www.gofundme.com/f/help-john-talbot. The Court may take judicial notice of Talbot's statements about this case on this publicly accessible website. *See* Fed. R. Evid. 201; *Lloyd v. Facebook*, 2022 U.S. Dist. LEXIS 180710, at *6 (N.D. Cal. Oct. 3, 2022).

Meanwhile, Talbot's assertion that Ainuu directed his Instagram posts "to a Montana audience" ignores Talbot's own allegations that Ainuu was "directing those posts to" OR in Washington. Opp. at 9; Compl. ¶¶ 65 ("Hey yo, Outdoor Research…"), 66(a) ("@outdoorresearch John … is not a good representation of your great brand"), 66(b) (tagging @outdoorresearch), 68(a) (same), 68(d) (same), 80 (same), 68(b) (encouraging viewers to "reshare" and "tag OR").

**Third**, Talbot's attempt to escape application of Washington's Anti-SLAPP Act on grounds that "Ainuu's speech is not 'on a matter of public concern'" is similarly without merit. Opp. at 19-20 (contending Ainuu was airing only a "personal grievance," not "engag[ing] in a serious discussion" about "the issue of race"). The First Amendment does not demand so much or protect so little. *See Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992) (holding that only "some part" of a challenged statement must be of public concern) (citing *Connick v. Myers*, 461 U.S. 138, 149 (1983)).

Further, this was not a purely "personal grievance." Ainuu's posts involved allegations of racism in the outdoor gear industry, *see Connick*, 461 U.S. at 148 n.8; events that took place in public, with multiple witnesses and the bartender intervening; and social media posts calling for a national brand to hold its employee accountable. *See* Compl. ¶¶ 60, 65, 66(a)-(b), 68(a)-(d), 80. Talbot cannot credibly claim that TNF is liable for Ainuu's speech because it aligns with

5

TNF's purported nationwide social justice initiative, while simultaneously contending that the posts involved a purely private matter.

Given Talbot's own allegations, Washington law, including its Anti-SLAPP Act, governs.

## II.    TALBOT FAILS TO STATE A CLAIM FOR DEFAMATION AGAINST TNF.

### A.    TNF Cannot Be Vicariously Liable for the Personal Speech of an Independent Contractor.

Talbot's concessions that TNF did not publish the Challenged Speech and that Ainuu is not its employee are fatal to his defamation claim because, even if Montana law applied, publication is required, § 27-1-802, MCA, and employers are "not liable for the torts of their independent contractors." *Robertson v. Ziplocal*, 2012 U.S. Dist. LEXIS 138566, at *5 (D. Mont. Sept. 26, 2012).[2]

Talbot strains to salvage his claim against TNF, arguing that, in posting, Ainuu was acting as TNF's apparent agent, based upon its past embrace of social causes and its failure to object to prior speech by its brand ambassadors. Opp. at 37-38. Neither case he cites supports his expansive claim. In *Keller v. Safeway Stores*, 111 Mont. 28, 36, 108 P. 2d 605, 610 (1940), the individual in question

---

[2] Although Talbot generically asserts that Dave Burleson "republished" one of Ainuu's posts, Opp. at 9, he fails to respond to case law holding that reposting, without commentary, is not republication as a matter of law. *See* Mem. at 14 n.4. This argument, too, is thus conceded.

"was the manager," *i.e.*, an employee, "on the date of the slander." And *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 560-61 (1982), involved activity by leaders of a formal ASME subcommittee plainly acting on behalf of the organization.

In contrast, Talbot alleges no facts to plausibly support his contention that Ainuu was acting as TNF's agent when he made late-night, emoji-laden posts about an interaction at a bar. *See* Mem. at 17-18. Talbot does not and cannot allege that TNF was even aware of Ainuu's posts before he published them, let alone that it authorized what Talbot calls "the rantings of an intoxicated man-child." *See* GoFundMe, n.1 *supra*.

Instead, Talbot's theory hinges entirely on the misguided notion that, because both Ainuu and TNF support social justice, and because Ainuu's postings were about race, TNF is liable for them. Not so. As a matter of law, such "parallel conduct," without more, "does not establish concerted action," let alone apparent agency. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Talbot also alleges a "pattern of conduct," comprised of two instances of TNF's *inaction* when sponsored athletes previously expressed personal views. *See* Opp. at 38-40. But silence is neither endorsement nor a grant of apparent authority. Because that silence signifies only that personal "speech interests deserve respect," TNF simply is not "liable for every tweet issued by one of its employees or agents." Mem. at

13-18 (quoting *Garnett v. Remedi Seniorcare of Va.*, 892 F.3d 140, 144 (4th Cir. 2018); *Lokhova v. Halper*, 441 F. Supp. 3d 238, 264 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021)). Talbot fails to address *Twombly*, *Garnett*, and *Lokhova*, or explain how his boundless theory of agency liability comports with them.

### B.      The Challenged Statements Are Protected Opinion.

Talbot mischaracterizes TNF's arguments as asserting that statements regarding racism are "categorically protected" or "can never be actionable as defamatory." Opp. at 7, 23. In fact, TNF argues only that *this* content (unverifiable, subjective conclusions regarding Talbot's biases, motives, and demeanor) in *this* context (late-night, emoji-laden Instagram posts) were not actionable statements of fact. *See* Mem. at 20-23. Talbot's arguments sidestep the actual content and context of Ainuu's posts, as well as applicable federal and state case law.

Even since TNF filed its opening brief, courts have continued to reaffirm that similar statements are protected opinion. In *Keisel v. Westbrook*, 2023 UT App. 163, for example, NBA star Russell Westbrook accused a Utah Jazz fan of saying something "racial" to him during a game. *Id*. ¶ 1. The Court concluded that, *regardless* of what the fan said or whether Westbrook linked what was said to his accusation of racism, Westbrook's statements were not actionable. *Id*. ¶¶ 37-38. It explained that what is racist depends on one's political and social views, so such

statements are "not capable of being proven true or false" and "a court is 'not in a position to give its imprimatur to one view or the other.'" *Id.* ¶ 40.

Similarly, in *Olthaus v. Niesen*, 2023-Ohio-4710 (Ct. App. 2023), a police officer sued over social media accusations that he was a white supremacist and had supposedly flashed a "white power" hand sign. The appellate court affirmed dismissal of the case, finding that such speech was "plainly subjective," "value-based" and "non-verifiab[le]," and that the ordinary reader of such terms would understand them to "lack[] precise meaning." *Id.* ¶ 16; *id.* (Plaintiff "muster[ed] no argument for how someone would plausibly go about proving or disproving one's white supremacist bona fides."). The court explained that viewers' interpretation of the hand sign, and the intent behind it, were likewise "subjective" and "not susceptible" to "verification." *Id.*

So too for how Ainuu perceived Talbot's statements and body language in the bar. Trying to make the posts sound factual, Talbot claims Ainuu accused him of "assault." Opp. at 35. But that term does not appear in Ainuu's posts. Rather, they are filled with loose, figurative, and imprecise terms like "squared up," "got right in my face," and "an invitation to fight." Even had Ainuu included a factual-sounding assertion like "assault," the context makes plain that his posts are properly understood as opinion. In yet another decision since TNF's opening brief, the Second Circuit held that, even theoretically verifiable statements—plaintiff had

9

herpes, was a stalker, and had committed domestic abuse—were, in context, non-actionable opinion because they were made in a forum known for personal viewpoints (Twitter), and readers would understand them as part of "the emotional aftermath of a [situation] when animosity would be expected to persist." *Rapaport v. Barstool Sports*, 2024 U.S. App. LEXIS 556, at \*11(2d Cir. Jan. 9, 2024); *see also Herring Networks v. Maddow*, 8 F.4th 1148, 1154-57 (9th Cir. 2021) (network "literally is paid Russian propaganda" was, in context, opinion) (cited in Mem. at 19, 22, 28; ignored by Talbot); *Knievel*, 393 F.3d at 1070, 1078 (suggesting that Knievel was a "pimp" and his wife was a prostitute were, in context, opinion).

In arguing otherwise, Talbot brazenly mischaracterizes the cases he cites. *See* Opp. at 30 (citing *Cooper v. Franklin Templeton*, 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022) ("To the extent [the statements] can be read together as calling Plaintiff a racist, or characterizing her conduct … as racist, the statement is inactionable" because "[i]t is well-established that an accusation of bigotry is a protected statement of opinion") (collecting cases), *aff'd*, 1012 U.S. App. LEXIS 14244 (2d Cir. June 8, 2023); *Jorjani v. N.J. Inst. of Tech.*, 2019 U.S. Dist. LEXIS 39026, at \*4-7, 13-17, 19-20 (D.N.J. Mar. 11, 2019) (statements calling plaintiff a racist and questioning his fitness to teach were "unverifiable opinions"); *Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 408 (E.D. Pa. 2001) (holding that, while a false accusation of making "a specific racist remark" could theoretically be

actionable, in the totality of the circumstances, statement was protected opinion); *O'Brien v. City of Saginaw*, 2011 U.S. Dist. LEXIS 200, at *12 (E.D. Mich. Jan. 3, 2011) ("[O]ne cannot prove a person is a racist or is not a racist, or that the person hates children or likes children.")).[3]

The three additional arguments Talbot advances are equally meritless. ***First,*** he contends that Ainuu's statements contain "a provable false factual connotation." Opp. at 23-24. But the single case he cites, *Roots v. Montana Human Rights Network*, 275 Mont. 408, 913 P.2d 638, 639-41 (1996), arose from statements involving specific, identifiable conduct, namely, being a "Ku Klux Klan organizer," which the plaintiff could rebut with evidence that he had never joined the group or engaged in organizing activities. In contrast, Ainuu's statements were statements of pure opinion. *See Keisel*, 2023 UT App. 163, ¶ 39 (distinguishing "between an allegation of racism generally (which would not be actionable) and an allegation based on more particular conduct (which could be)").[4]

---

[3] Talbot's reliance on *Davis v. Cornely*, 2021 U.S. Dist. LEXIS 198245 (N.D. Ohio Oct. 13, 2021), is even further afield. There, the court held it could exercise supplemental jurisdiction over defendant's defamation counterclaim, without addressing whether that claim was viable or involved protected opinion. *Id.* at *11.

[4] Because statements of pure opinion are, by definition, neither true nor false, Talbot's assertion that Ainuu "admitted" to OR that Talbot did not say or do anything overtly racist is irrelevant. Regardless, Talbot's allegation is flatly inconsistent with his admissions that (a) OR terminated him after speaking with Ainuu, Compl. ¶¶ 72, 77-78, and (b) the company "conclu[ded] that [he] engaged in discriminatory conduct," Opp. at 29.

**Second**, Talbot cherry-picks third-party comments made in response to Ainuu's posts and argues they should inform the Court's adjudication as a matter of law about how a reasonable reader would understand them. Opp. at 29. But, courts routinely reject the claim that *individual* reader comments establish how a *reasonable* reader would interpret challenged speech. *See, e.g.*, *Daniels v. Loop Interactive Grp.*, 2015 Cal. App. Unpub. LEXIS 114, at *20 (Jan. 9, 2015) (comments posted to online version of article "are not indicative" of what "the average reader understood"); *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 2008 U.S. Dist. LEXIS 105088, at *9-11 (D. Haw. Dec. 31, 2008) (declining to consider anonymous online comments), *aff'd*, 2009 U.S Dist. LEXIS 9067 (D. Haw. Feb. 6, 2009).

**Third**, Talbot pivots, essentially conceding the Challenged Statements are opinion, but asserting they are "mixed" rather than "pure" opinion and that Ainuu failed to sufficiently disclose the facts upon which his opinion was based. Opp. at 24. Even if the Court were to depart from the overwhelming body of law holding that allegations of racism are pure opinion, and required Ainuu to disclose facts upon which his subjective perception was based, he *did* so. Specifically, Ainuu's posts recounted that:

- Talbot approached him and "started asking questions—very directly—about diversity." Compl. ¶ 65; *see also* Opp. at 28 n.4.

- When Ainuu tried to answer Talbot's questions, Talbot "kept cutting [him] off, didn't want to hear what" Ainuu had to say. Compl. ¶ 65.

- Ainuu then started to "correct [Talbot] and direct him and educate" him, but he "got very defensive." *Id.*

- Ainuu responded with, "I told you the truth, don't cut me off while I'm talking if you're asking. You're not listening." *Id.*

- Ainuu then told Talbot he was "racist and entitled," ended the conversation, and walked into the bar to get away. *Id.* ¶ 58.

- Talbot, however, followed him inside and went straight up to Ainuu. *Id.* ¶ 65.

- When Talbot insisted on shaking Ainuu's hand, Ainuu suggested instead that Talbot buy him a beer as an apology but Talbot again got defensive, claiming that he "didn't do anything wrong." *Id.*

- Talbot then "squared up to" Ainuu, "got right in [his] face like this" (demonstrating), and was trying "to fight" him. *Id.* ¶¶ 65, 66(b).

Because Ainuu disclosed the facts on which his opinions were based, readers could draw their own conclusions about whether Talbot's behavior was racially charged and physically menacing. They are therefore non-actionable as a matter of law. *See* Opp. at 35 n.6 (conceding that such disclosures preclude liability).[5]

---

[5] Talbot misreads *Sandmann v. New York Times Co.*, 78 F.4th 319 (2023), as involving opinion based on disclosed facts. Opp. at 33-34. The Court ruled the "blocking" statements were "pure opinion" because they expressed a "subjective understanding of the situation and of Sandmann's intent, an understanding formed by the pair's proximity, the other students' movement, and the lack of communication." *Id.* at 331-33 (explaining statements were "contextual and subjective, *not* 'a conclusion that follows incontrovertibly from asserted facts'").

## **<u>CONCLUSION</u>**

For the foregoing reasons, including because Talbot offers no response to TNF's arguments that amendment would be futile, Mem. at 28, TNF respectfully requests that the Court dismiss the Complaint with prejudice and award its attorneys' fees and costs pursuant to RCW 4.105.090.

*Signatures on following page*

Respectfully submitted this 30th day of January, 2024.

By: */s/ Peter Michael Meloy*
Peter Michael Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, MT 59624
Telephone: (406) 442-8670
Email: mike@meloylawfirm.com

By: */s/ Leita Walker*
Leita Walker*
Isabella Salomão Nascimento*
**BALLARD SPAHR LLP**
2000 IDS Center, 80 S Eighth St.
Minneapolis, MN 55402-2119
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
Email:walkerl@ballardspahr.com
Email:salomaonascimentoi@ballardspahr.com

Seth D. Berlin*
**BALLARD SPAHR LLP**
1909 K St., NW
12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
Email: berlins@ballardspahr.com

*Admitted *pro hac vice*

*Attorneys for Defendant VF Outdoor, LLC d/b/a The North Face*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing **Reply Brief in support of Combined Motion to Dismiss and Special Motion for Expedited Relief** complies with Local Rule 7.1, containing 3,249 words, excluding only those items listed in the rule.

<u>/s/ *Leita Walker*   </u>
Leita Walker

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 30 January 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record pursuant to the Local Rules.

<u>/s/ *Leita Walker*   </u>
Leita Walker