James H. Goetz
Jeffrey J. Tierney
**GOETZ, GEDDES & GARDNER, P.C.**
35 North Grand Ave.
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:      406-587-0618
Fax:     406-587-5144
Email: jim@goetzlawfirm.com 12
         jtierney@goetzlawfirm.com

Attorneys for Defendant Manoah Ainuu

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | |
|---|---|
| JOHNATHAN TALBOT,<br><br>                              Plaintiff,<br><br>v.<br><br>MANOAH AINUU, and THE NORTH FACE APPAREL CORP., A Delaware Company,<br><br>                              Defendants. | Cause No. 2:23-CV-00066-BU-BMM<br>Hon. Brian Morris<br><br>**Ainuu's Reply in Support of Motion to Dismiss and Special Motion for Expedited Relief** |

Washington law clearly controls, disposing of certain disallowed claims and remedies and bringing this case within Washington's Anti-SLAPP statute. Under *any* substantive law—Washington, Montana, or federal common law—it is also clear that Ainuu's statements are protected opinion, not actionable defamation or tortious interference. The Court should dismiss.

## I.  WASHINGTON LAW GOVERNS.

### A.  Washington has the most significant relationship with this case, presumptively and in fact.

The plaintiff's domicile (or place of business for business-related injuries) is the "single most important contact" for choosing the substantive law in a multi-state defamation case. Restatement (Second) of Conflict of Laws § 145, cmt. e. This affords a presumption which will "usually" control, *id.* § 150, unless rebutted by proof that another state has a more significant relationship based on other contacts and the policy considerations laid out in Restatement § 6(2). *But see Rice v. Nova Biomed. Corp.*, 38 F.3d 909, 916 (7th Cir. 1994) (the presumption is so weighty and the multifactor test often so "inoperab[le]" that some courts treat domicile as functionally dispositive: "the applicable law is that of the victim's domicile, period.").

At bottom, the question for the Court is whether Talbot has shown Montana has a sufficiently strong interest to overcome the presumption favoring Washington law. He has not.

First, Talbot's own allegations and written testimony confirm the presumptive result. Talbot's complaint states he is a Washington resident and focuses on the loss of his Washington job after Ainuu's statements were published to his Washington employer. Talbot filed a six-page declaration (Doc. 1-8) mostly

2

about that job and the ramifications of his termination. This loss of income is the only special damage he claims. Washington clearly has the dominant interest.

Against the weight of his own pleadings, Talbot's brief makes claims—mostly without evidence—about his subjectively greater ties to Bozeman and his reputation there. He speculates that Ainuu somehow "directed" his comments to a Bozeman audience to harm Talbot's reputation in his former community. In truth, the only specified recipient was Outdoor Research in Washington. *See* Doc. 1-9. The Court should reject Talbot's effort to reframe the issues based on such unpled "facts." *See Nunes v. CNN*, 31 F.4th 135, 145 (2d Cir. 2022) (plaintiff's claim focused on injury in his home state where he held political office; general reputational harm and "naked assertions" of ties to other states could not "overcome the presumption" favoring the law of his domicile).

Talbot's further discussion about Bozeman being the location of "the conflict" is wrong on several levels.

First, Talbot cites Restatement § 146 for the proposition that the place of the defendant's conduct is the place of injury in "the majority of cases." *See* Doc. 34, p. 15. But § 146 concerns personal injury torts generally. This case falls under § 150, a more specific provision that recognizes the places of the underlying events, the defendant's actions, and the injury may not coincide. The Restatement resolves

this conflict by supplying a different presumptive rule.

Second, the altercation at the Crystal Bar is not the basis for Talbot's claim and the bar is not the location of the wrong. The alleged defamation took place on the internet which has no geographic center.

The location of the defendant and "where the harm emanated" are "of less significance" in multistate defamation cases. *Hanley v. Tribune Pub. Co.*, 527 F.2d 68, 70 n.6 (1975). Courts must not give too much weight to these considerations which would "undermine the generally accepted premise that the state where injury was suffered is a more appropriate choice[.]" *Id.* at 70.

For example, in *Ratner v. Kohler*, No. 17-542, 2018 WL 1055528 at *4–5 (D. Haw. Feb. 26, 2018), the plaintiff sued in Hawaii to avoid the Anti-SLAPP law in his home state of California. The plaintiff argued the defendant lived in Hawaii and posted defamatory online content from there. *Id.* He seemingly also asserted, but offered no cognizable evidence, that he would suffer reputational injury in Hawaii. *Id.* at *13–14. These contacts were insufficient to overcome the facts that the plaintiff "resides and conducts his business" in California and the principal injury framed by the complaint was to his profession as a Hollywood movie executive, so California law controlled. *Id.*

The South Dakota Supreme Court reached a similar conclusion in *Seele v.*

4

*Pierce*, 494 N.W.2d 634, 637 (S.D. 1992), when allegedly defamatory communications were published in both South Dakota and Nebraska. Nebraska does not allow punitive damages so the plaintiff tried to invoke South Dakota law by arguing he socialized, did business, and would suffer reputational injury there. *Id*. But Nebraska was the plaintiff's domicile and the "heart of [the] case" was that the publication reached the plaintiff's employer in Nebraska. *Id.* Incidental contacts or social embarrassment in South Dakota were insufficient to avoid Nebraska law.

Finally, applying Washington law comports with the public policy of both candidate states which is one of the "most important" factors under Restatement § 6. *Phillips v. GMC*, 2000 MT 55, ¶ 37, 298 Mont. 438, 995 P.2d 1002.

Montana favors allowing "Montana plaintiffs" to seek remedies for tortious conduct in Montana courts and under its laws, but Talbot is not a Montana plaintiff. *Simmons v. State*, 206 Mont. 264, 670 P.2d 1372, 1383 (1983). Montana condemns forum shopping as an "unacceptable practice" and will not predicate the determination of the parties' rights on where "the highest possible damage award" might be available. *Id.*

Washington also has an interest in providing redress for its residents, including Talbot, under its own law. *Williams v. Leone Keeble, Inc.*, 285 P.3d 906, 913 (Wash. App. 2012). Washington has expressed a policy favoring expansive free

5

speech by enacting an Anti-SLAPP law and prohibiting punitive damages. Allowing a Washington plaintiff to use Montana law to skirt these limitations would thus be contrary to Washington public policy, too. *See In re Marriage of Verbin*, 595 P.2d 905, 912 (Wash. 1979) (condemning the "divisive and deplorable practice of forum shopping"); *Seele*, 494 N.W.2d at 627 (allowing plaintiff's claim to proceed under the law of the forum state, rather than his home state, to seek punitive damages would have counterproductively rewarded forum shopping).

Applying Washington law is presumptively correct, consistent with public policy, and the "most important" contacts all point to Washington. The Court should hold that Washington law applies.

### B. There is no contrary choice-of-law directive.

Talbot alternatively invokes Restatement § 6(1), which says that courts should follow statutory choice-of-law directives. *See, e.g., Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, § 55, 345 Mont. 262, 191 P.3d 389 (citing § 28-3-102, MCA: contracts are interpreted under the law of the place of performance).

Talbot cites no comparable defamation statute because there is not one. "**There is no statutory directive regarding choice of law in Montana for issues sounding in tort**." *Buckles v. BH Flowtest, Inc.*, 2020 MT 291, ¶ 11, 402 Mont. 145, 476 P.3d 422 (emphasis added).

Talbot argues that the Montana Constitution amounts to a choice-of-law directive because "[i]n all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts." Mont. art. II, § 7. But, this provision only speaks to who decides certain issues. It says nothing about which substantive law controls. It does not direct the choice of law.

Talbot further argues *the jury* must choose the law based on Article II, § 7. But, "[j]udges, not juries, decide questions of law, such as choice of law issues." *Gramercy Mills v. Wolens*, 63 F.3d 569, 571 (7th Cir. 1995); *see Stromberg v. Qualcomm*, 14 F.4th 1059, 1066 (9th Cir. 2021) (choice-of-law is reviewed de novo and *the court's* decision of related fact issues for clear error). Talbot's notion, that the Montana Constitution upends this principle of federal procedural law and allows the jury to choose what law it will apply, is wrong.

Article II, § 7 is derived from Fox's Libel Act, an eighteenth-century English law (32 Geo. III, c. 60 (1792)) which served "to correct a practice which had grown up in England" whereby the court would only submit limited special interrogatories to the jury then decide for itself the ultimate question of guilt or liability in defamation cases. *Jacobs v. Transcont. & W. Air, Inc.*, 216 S.W.2d 523 (Mo. 1948). Fox's Act "did not deprive the judge of authority" to decide legal

7

issues or to toss the case if it was deficient as a matter of law. *Id.*; Restatement (Second) of Torts § 614, cmt. c.

The Montana Supreme Court has long understood this. It is well settled that the Montana Constitution does not materially alter the roles of judge and jury in a defamation case. It remains the province of the court to rule upon legal issues and to decide the legal sufficiency of claims. *Griffin v. Op. Pub. Co.*, 114 Mont. 502, 138 P.2d 580, 586 (1943); *Lence v. Hagadone*, 258 Mont. 433, 853 P.2d 1230, 1234 (1993) (*Griffin* "disposed of" such arguments); *Hale v. City of Billings*, 1999 MT 213, ¶¶ 16–18, 295 Mont. 495, 986 P.2d 413, 418 (1999); *Williams v. Pasma*, 202 Mont. 66, 656 P.2d 212, 214 (1982); *Kurth v. Great Falls Tribune*, 246 Mont. 407, 411, 804 P.2d 393, 395 (1991); *McLeod v. State*, 2009 MT 130, ¶ 20, 350 Mont. 285, 206 P.3d 956.

The Ninth Circuit agrees. Affirming dismissal of a defamation claim, *Knievel v. ESPN, Inc.*, 393 F.3d 1068 (9th Cir. 2005), held that Article II, § 7 does not guarantee a right to jury trial in state court or under state rules. *Id.* at 1072–73. Nor does it supplant the power and responsibility of federal district courts, sitting in diversity, to apply federal procedural law under the *Erie* doctrine. *Id.* The Montana Supreme Court has "repeatedly" affirmed the power of the courts to resolve legal issues in defamation cases. *Id.*

Finally, in other states that have enshrined Fox's Act in their constitutions, courts do not treat it as a choice-of-law directive or leave it up to the jury as Talbot urges. *See*, *e.g.*, *Seele*, 494 N.W.2d at 627 (applying Nebraska law based on Restatement § 150 notwithstanding South Dakota Const. art. VI, § 5); *Jackson v. Sloan*, 931 S.W.2d 807, 808 (Mo. App. 1996) (dismissing a defamation claim that failed under applicable Kansas law notwithstanding Missouri Const. art. I, § 8).

Talbot's "constitutional directive" argument is wrong. He mistakes the history and effect of Article II, § 7 and ignores binding precedent.

### C. The Washington Anti-SLAPP statute applies.

This case is within Washington's Anti-SLAPP law because Ainuu's speech involves matters of public concern. Speech touches the public concern "when it can be fairly considered as relating to any matter of political, social or other concern to the community" which the Court decides based on "the whole record." *Jha v. Khan*, 520 P.3d 470, 477 (Wash. App. 2022).

Talbot's complaint goes to great lengths to make the case that Ainuu's social media posts served an ideological agenda concerned with racial politics and social justice. *See also* Doc. 24, pp. 38–39 (arguing that Ainuu was engaging in political speech on behalf of TNF). Talbot thus frames the issue to politicize his cause and to try to hold TNF accountable. Then, when it suits his goal of avoiding

9

Washington free speech laws, Talbot calls it a purely private dispute. He cannot have it both ways. Ainuu's comments were addressed to matters of public concern and contributed to the public discourse about race relations and the diversification of historically white spaces.

## II. TALBOT'S DEFAMATION CLAIM SHOULD BE DISMISSED.

As explained above, it is the Court's task to decide legal issues in defamation cases. That includes, under both Montana and Washington law, determining whether a statement is protected opinion. *Camer v. Seattle-Poster Intelligencer*, 723 P.2d 1195, 1201 (Wash. App. 1986); *Hale*, ¶ 22.

### A. Talbot cannot carry his burden to show falsity because Ainuu's remarks are opinions not capable of objective verification.

Talbot's argument gives short shrift to an overwhelming body of law holding that accusations of racism are not actionable absent some identifiable and verifiable discriminatory conduct.

Under either state's law, it is Talbot's burden to prove Ainuu's statements are false and the "action must fail" if the "fact finding process is unable to conclusively resolve whether the statement is true or false." *Roots v. Mont. Hum. Rights Network*, 275 Mont. 408, 913 P.2d 628 (1996); *see Sisley v. Seattle Sch. Dist.*, 286 P.3d 974, 978 (Wash. App. 2012); *Hale*, ¶ 23 (a statement is protected opinion if it does not contain a "provably false factual connotation" or "cannot reasonably

10

be interpreted as stating actual facts about an individual." (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)).

Ainuu respectfully reiterates that it is well-settled that calling someone "racist" is a subjective value judgment and a matter of opinion which generally cannot be proven or disproven. It is therefore not actionable and such claims are subject to dismissal. *See* Doc. 28, pp. 4–8.

Talbot's allegation that Ainuu recanted is immaterial.[1] Taking that allegation as true, it does not change the outcome because the touchstone of the "opinion" inquiry is not the speaker's subjective intent or belief. The question is how the statement would be construed by a reasonable audience, i.e. whether it could be "reasonably interpreted as stating false facts." *Milkovich*, 497 U.S. at 25; *Knievel*, 393 F.3d at 1075; *Duc Tan v. Lee*, 300 P.3d 356, 363 (Wash. 2013); *Hale*, ¶ 23.

Talbot also argues that Ainuu's statements are mixed statements that *imply* undisclosed and provably false defamatory facts. That is not the case.

Certainly, some statements of apparent opinion are actionable because they contain a provably false and defamatory implication. To borrow the classic illustration from *Milkovich*, the statement "In my opinion Jones is a liar" implies that Jones told a lie. *Id.*, 497 U.S. at 20; *accord Duc Tan*, 177 Wn.2d at 663; *Hale*, ¶¶

---

[1] It is also *disputed* but that is equally immaterial at this juncture.

11

29–31 ("opinion" that plaintiff was an "armed and dangerous" felon implied he committed a violent crime which is both provably false and defamatory).

But calling someone a "racist" has no such concrete, factual implication. If an accusation of racism invites the listener to infer that the subject said or did "racist" things, those are equally subjective and unverifiable value judgments.

Talbot's focus on Ainuu's statements that Talbot tried to start a fight does not change the analysis. These statements do not involve any particularized and factual opprobrious behavior like membership in a notorious hate group. *See, e.g., Roots, supra* (alleged membership in the KKK). Instead, Ainnu's statements were subjective interpretations of Talbot's purpose, intent and meaning which is *opinion* as illustrated by the *Sandmann* case.

*Sandmann* arose from a racially charged altercation between Nicholas Sandmann, who was attending a pro-life rally, and Nathan Phillips, a Native American elder and a participant in the Indigenous Peoples March, when the two groups collided—literally and figuratively—on the National Mall. Phillips gave widely reported statements that painted Sandmann as a racist. Sandmann sued for defamation. Seeking to avoid the case law recognizing this is a matter of opinion, he tried to seize on factual snippets in Phillips' statements. Sandmann argued that Phillips stated objective facts about their encounter that were provably false, i.e.

that Sandmann "stood in [his] way," "blocked" him, and did not allow him to retreat. *Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 323 (6th Cir. 2023).

The court rejected this argument. It explained that, just as an apparent "opinion" can sometimes communicate false facts, a statement "ostensibly in the form of a factual statement" is protected opinion if it is clear from context that it is "personal comment" on, or subjective assessment of, the event described. *Id.* at 321. Thus, Phillips' statements that Sandmann "blocked" him and did not allow him to retreat did not transform Phillips' opinion that Sandmann was racist into an actionable fact dispute. Whether Sandmann's physical actions could be so construed was "dependent on perspective" and reflected Phillip's subjective understanding of the situation and his inferences about Sandmann's purpose and intent which are not "'susceptible' of bring proven true or false under the circumstances." *Id.* at 332 (quoting *Milkovich*, 497 U.S. at 21).

Washington law agrees. It recognizes that the involvement of some elements of apparent fact does not transform every negative comment into an actionable "mixed" statement or strip every opinion of constitutional protection. In *Seaquist v. Caldier*, 438 P.3d 606 (Wash. App. 2019), for example, the plaintiff sued over a Facebook post accusing him of "stalk[ing]" and "secretly photographing" a political opponent. *Id.* at 568. The defamatory sting of the accusation was that

13

Seaquist was invading someone's privacy and making them feel unsafe. *Id.* Whether he was physically present or taking photographs was not the point. The core accusation that he engaged in "secretive" and surreptitious behavior was not "provably false" so the statements were not actionable. *Id.*

Likewise, the sting of the publication in this case was that Ainuu thought Talbot was a racist. Ainuu's statements that Talbot tried to start a fight reflect his perspective on his encounter with Talbot and his subjective impressions about Talbot's character, behavior, purpose, and intent. These are matters of opinion.

### B. Talbot neglects important context.

Talbot's argument dismisses, wholesale, authorities from Washington and elsewhere that the Court must consider context including the casual culture of social media, the informal and emotive character of Ainuu's posts, and the surrounding facts and circumstances.

Talbot argues that such context cannot be gleaned from the complaint and "should not be taken seriously[,]" *See* Doc. 34, p. 28, but Ainuu's arguments cited the Rule 12 record. The relevant context cues are provided by the platform, the posts, and the documents attached to and cited in Talbot's complaint. They contextually confirm that a reasonable audience would not interpret Ainuu's posts as more than expressive speech, heated rhetoric, and opinion.

## III. TALBOT CONCEDES THERE IS NO INDEPENDENT CLAIM FOR TORTIOUS INTERFERENCE OR PUNITIVE DAMAGES.

The Court should also dismiss Talbot's tortious interference and punitive damage claims.

Talbot does not dispute that his tortious interference theory is not independently cognizable. He only argues that he adequately stated a defamation claim so the tortious interference claim also survives. Conversely, if the Court concludes the defamation claim is deficient, Talbot necessarily concedes that the tortious interference claim fails. And, lacking any cognizable underlying tort, the punitive damage claim fails, too, as well as being barred by Washington law.

Even if the Court permits the defamation claim to proceed, it should dismiss the redundant tortious interference claim. *See* Doc. 28, pp. 12–13; *Folsom v. MPEA*, 2017 MT 204, ¶ 21, 400 P.3d 706 (plaintiffs cannot "creatively cleave" multiple torts out of one by asserting under different headings "essentially duplicative" claims for the same injury).

Alternatively, Talbot's alternative theory fails on the element of causation. He does not refute that his own allegations and evidence point to other reasons for his termination, i.e. his conduct and "poor judgment" in Bozeman before ever meeting Mr. Ainuu.

15

## CONCLUSION

TNF/Ainuu's motions should be granted. The Court should conclude that Washington law controls and, applying Washington law, Talbot has failed to state a claim upon which relief should be granted.

DATED January 30, 2024

**GOETZ, GEDDES & GARDNER, P.C.**

Attorneys for Manoah Ainuu

_____
James H. Goetz
Jeffrey J. Tierney

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the formatting requirements of Local Rule 7.1(d)(2). It contains 3,250 words as calculated by Microsoft Word, excluding the caption and this Certificate of Compliance.

_____
Jeffrey J. Tierney